# EXHIBIT
# 1



West Virginia E-Filing Notice

CC-02-2022-C-272

Judge: Laura Faircloth

**To:**   William E. Murray
wmurray@anspachlaw.com

# **NOTICE OF FILING**

IN THE CIRCUIT COURT OF BERKELEY COUNTY, WEST VIRGINIA
Jessica Bowers v. Department of Military Affairs and Public Safety
CC-02-2022-C-272

The following amended complaint was FILED on 4/19/2023 11:43:36 AM

Notice Date:      4/19/2023 11:43:36 AM

Michelle R. Schoppert
CLERK OF THE CIRCUIT COURT
Berkeley County
380 W South Street
MARTINSBURG, WV 25401

(304) 264-1918
Michelle.Schoppert@courtswv.gov

# COVER SHEET

E-FILED | 4/19/2023 11:43 AM
CC-02-2022-C-272
Berkeley County Circuit Clerk
Michelle R. Schoppert

| GENERAL INFORMATION |
|---|

IN THE CIRCUIT COURT OF BERKELEY COUNTY WEST VIRGINIA

**Jessica Bowers v. Department of Military Affairs and Public Safety**

**First Plaintiff:**    ☐ Business   ☑ Individual          **First Defendant:**    ☐ Business   ☐ Individual
                        ☐ Government   ☐ Other                                    ☑ Government   ☐ Other

**Judge:**          Laura Faircloth

| COMPLAINT INFORMATION |
|---|

**Case Type:**  Civil                          **Complaint Type:**  Tort

**Origin:**          ☑ Initial Filing   ☐ Appeal from Municipal Court   ☐ Appeal from Magistrate Court

**Jury Trial Requested:**          ☑ Yes   ☐ No      **Case will be ready for trial by:**   11/4/2024

**Mediation Requested:**           ☑ Yes   ☐ No

**Substantial Hardship Requested:**  ☐ Yes   ☑ No

☐ Do you or any of your clients or witnesses in this case require special accommodations due to a disability?

  ☐ Wheelchair accessible hearing room and other facilities

  ☐ Interpreter or other auxiliary aid for the hearing impaired

  ☐ Reader or other auxiliary aid for the visually impaired

  ☐ Spokesperson or other auxiliary aid for the speech impaired

  ☐ Other: _____

☐ I am proceeding without an attorney

☑ I have an attorney:   Christopher Heavens, 2438 KANAWHA BLVD E, CHARLESTON, WV 25311

## SERVED PARTIES

**Name:**    Division of Corrections and Rehabilitation

**Address:**    1409 Greenbrier Street, Charleston WV 25311

**Days to Answer:** N/A    **Type of Service:** No Service

---

**Name:**    Wexford Health Sources, Inc.

**Address:**    c/o Joseph M. Ebbitt 501 Holiday Drive, Suite 300, Pittsburgh PA 15220

**Days to Answer:** N/A    **Type of Service:** No Service

---

**Name:**    Department of Military Affairs and Public Safety

**Address:**    1409 Greenbrier Street, Charleston WV 25311

**Days to Answer:** N/A    **Type of Service:** No Service

---

**Name:**    PrimeCare Medical of West Virginia

**Address:**    c/o Thomas J. Weber, Esq, CEO 3940 Locust Lane, Harrisburg PA 17109

**Days to Answer:** 30    **Type of Service:** Filer - Secretary of State

---

**Name:**    PrimeCare Medical, Inc.

**Address:**    c/o Joshua Lock 3940 Locust Lane, Harrisburg PA 17109

**Days to Answer:** 30    **Type of Service:** Filer - Secretary of State

E-FILED | 4/19/2023 11:45 AM
CC-02-2022-C-272
Berkeley County Circuit Clerk
Michelle R. Schoppert

## IN THE CIRCUIT COURT OF BERKELEY COUNTY, WEST VIRGINIA

JESSICA B. BOWERS,

        Plaintiff,

v.                                       Civil Action No. 22-C-272
                                       Judge Faircloth

STATE OF WEST VIRGINIA,
DEPARTMENT OF HOMELAND
SECURITY, DIVISION OF CORRECTIONS
AND REHABILIATION, a West Virginia State Agency,
and JOHN / JANE DOE, unknown employees
or agents of the above entity, in their individual
capacities, and as employees or agents of the above entities.
PRIMECARE MEDICAL OF WEST VIRGINIA, INC.,
a West Virginia Corporation; PRIMECARE MEDICAL, INC.,
a foreign corporation;

        Defendants.

### AMENDED COMPLAINT

NOW COMES Jessica Bowers, Jessica B. Bowers (Jessica Bowers), by counsel, Christopher J. Heavens of Heavens Law Firm, PLLC, and for her Amended Complaint against the above-named Defendants alleges as follows:

### PARTIES

1.    Jessica Bowers was incarcerated at Division of Corrections and Rehabilitation's facility at the Eastern Central Regional Jail in Martinsburg, Berkeley County, West Virginia, at the time of the events complained of in this Amended Complaint. Jessica Bowers is a resident of Hedgesville, Berkeley County, West Virginia.

2.      Defendant, Division of Corrections and Rehabilitation (hereinafter sometimes referred to as the "Division of Corrections" or "ERJ") is a West Virginia State Agency within the Department of Homeland Security.

3.      Defendants, John/Jane Doe are presently unknown employees, representatives, or agents of the Defendant Division of Corrections and Rehabilitation, whose actions/inactions contributed to and caused the injuries to Jessica Bowers.

4.      Defendant, PrimeCare Medical of West Virginia, Inc., is a West Virginia corporation created under the laws of the State of West Virginia, which provides medical services to inmates at facilities run by the Defendant Division of Corrections and Rehabilitation, including the Eastern Regional Jail in Berkeley County, West Virginia. Defendant PrimeCare Medical, Inc., is a foreign corporation composed of the same or similar members as PrimeCare Medical of West Virginia, Inc., and provides medical services to inmates at facilities run by the Defendant Division of Corrections and Rehabilitation, including the Eastern Regional Jail in Berkeley County, West Virginia. (Throughout this Amended Complaint these defendants are collectively referred to as "PrimeCare").

## JURISDICTION AND VENUE

5.      Jessica Bowers re-alleges and incorporates by reference, as if fully set forth herein, all the allegations contained in the above paragraphs of the Amended Complaint.

6.      Pursuant to W. Va. Code § 55-17-3, notice of this action has been properly served upon the chief officer of the government agency defendants and the office of the West Virginia Attorney General.

7.     Venue for this action properly lies in this court because the wrongful acts and/or omissions that form the basis for this action occurred in Berkeley County, West Virginia.

**INTRODUCTION**

8.     Jessica Bowers re-alleges and incorporates by reference, as if fully set forth herein, all the allegations contained in the above paragraphs of the Amended Complaint.

9.     Jessica Bowers was detained at ERJ on March 10, 2022, and was found unresponsive in her cell on March 29, 2022, having overdosed on Fentanyl that was brought into the defendant's facility, in whole or in part, because of the wrongdoing of the defendants.

10.     Jessica Bowers was taken by ambulance from ERJ to Berkeley Medical Center (BMC) where BMC found fentanyl in her system. On page 5 of the Berkeley Medical Center record, documentation reveals the diagnosis:

> Poisoning by fentanyl or fentanyl analogs, accident (unintentional) initial encounter (CMS HCC)

> SEE: Page 5 of BMC Record, attached as **Exhibit 1.**

11.     Jessica Bowers was not ordered or dispensed Fentanyl as part of her medical care while incarcerated from March 10, 2022, to March 29, 2022, at ERJ.

12.     Jessica Bowers could have only ingested Fentanyl if it was brought into ERJ, either with the criminal participation of John/Jane Doe defendants or as a result of the deliberate indifference of defendants.

13.     At the time of her injury on Tuesday, March 29, 2022, Jessica Bowers was being housed in intake for observation at ERJ and was under the care of ERJ and PrimeCare Medical of West Virginia, Inc.

14.   Jessica Bowers was booked into the Eastern Regional Jail at 2317 hours, on March 10, 2022, and on this date and March 11, 2022, there was a medical Screening completed on Jessica Bowers.

15.   On March 18, 2022, Jessica Bowers was transferred from her general cell to intake for observation due to it being reported that she was taking drugs in her cell.

16.   On March 18, 2022, the defendants knew and/or should have known that illegal drugs had been brought into their facility and there was a high risk of harm to Jessica Bowers because of the use of illegal drugs, and defendants did nothing to prevent Jessica Bowers from ingesting illegal drugs.

17.   At all times relevant herein, the bringing of illegal drugs and contraband into defendant's facilities was at epidemic levels because of the understaffing of defendant's facilities, lack of control over the screening of persons entering the defendant's facilities and because of the active criminal participation of defendants own employees, who have been convicted of accepting bribes and bringing drugs and contraband into defendant's facilities.

18.   The understaffing of defendant's facilities has created an environment where even minimum standards for correctional facilities cannot be met and, in 2022, the governor of West Virginia declared a state of emergency because the staffing shortages at the defendant's facilities was creating conditions that violated the constitutional rights of persons incarcerated therein, and created an environment where injury and death to incarcerated persons was increasing because of said understaffing. SEE: Emergency Order, attached as **Exhibit 2.**

19.   The state of emergency declared by the Governor has been widely reported in the news media and West Virginia Division of Corrections and Rehabilitation Acting Commissioner Brad Douglas told a legislative committee in 2023, "There are 1,027

vacancies, which is 33% vacancy rate for officers and a 27% vacancy rate overall. That number, as you can see there on your chart, it's slowly getting worse."

20.     As a result of the defendants' deliberate indifference, Jessica Bowers was deprived of oxygen for a period of time in her cell after overdosing, resulting in permanent brain damage to Jessica Bowers .

## APPLICABLE LEGAL STANDARDS

21.     Jessica Bowers re-alleges and incorporates by reference, as if fully set forth herein, all the allegations contained in the above paragraphs of the Amended Complaint.

22.     The Division of Corrections and Rehabilitation has a duty to its inmates to provide adequate and appropriate medical care and to ensure that those persons to whom they assign this duty are appropriately providing medical care to incarcerated persons, and they breached this duty to Jessica Bowers.

23.     The Division of Corrections and Rehabilitation in blatant and reckless disregard for its basic obligations to incarcerated persons, inflicted cruel and unusual punishment upon Jessica Bowers during the period she was under its custody and control, by callously ignoring her medical needs, ultimately causing her brain damage, all in violation of the 1st, 4th, 5th, 6th, 8th and 14th Amendments of the United States Constitution.

24.     The actions and/or inactions of all the Defendants and their agents, representatives and employees in assessing and treating Jessica Bowers' and failing to provide her a medical unit or hospital where she could have received appropriate treatment, was deliberately indifferent and caused damages to the person of Jessica Bowers. Because of the deliberate indifference of Defendants, Jessica Bowers has suffered, and continues to suffer permanent damages.

25.     The Defendants failed to oversee the actions/inactions of their employees, representatives and agents resulting in deliberately indifferent conduct occurring that affected Jessica Bowers', placement within the jail and treatment and provision for safety during her incarceration, including permitting illegal drugs to be brought to Jessica Bowers who they knew was a drug addict when Jessica Bowers entered defendant's facility.

26.     All Defendants, even those not specifically identified in this Count, as detailed throughout this Amended Complaint and in the above and below factual descriptions and causes of actions, either directly caused damages and brain damage to Jessica Bowers through their negligent, deliberately indifferent and/or reckless actions/inactions, failed to adequately take steps to care for Jessica Bowers or are vicariously and strictly liable for the same for the reasons stated throughout this Amended Complaint.

27.     Pursuant to *Hafer v. Melo*, 502 U.S. 21, 31 (1991), Defendants John/Jane Doe are state officials being sued in their individual capacities as persons within the meaning of 42 U.S.C.A. §1983.

28.     As is detailed herein below, Defendants John/Jane Doe are not entitled to qualified immunity under §1983 because (1) they violated a federal or constitutional right of Jessica Bowers and (2) the unlawfulness of their conduct as it pertained to Jessica Bowers was clearly established at the time of her injuries. *Reichle v. Howards*, 566 U.S. 658, 664 (2012).

29.     As is detailed herein below, under the Fourteenth Amendment to the U.S. Constitution, there is clear evidence that there was deliberate indifference to the serious medical needs of Jessica Bowers by Defendants John/Jane Doe, is detailed herein below.

30.     At all times relevant herein, Jessica Bowers was detainee and under the Fourteenth Amendment Due Process Clause, she was entitled to protection against "cruel and unusual punishment." The Fourth Circuit Court of Appeals has held the rights of detainees under the Fourteenth Amendment are even greater than the rights of convicted prisoners under the Eighth Amendment when it comes to protection from "cruel and unusual punishment." *Cooper v. Dyke*, 814 F.2d 941, 948-49 (4th Cir. 1987). Under *Cooper v. Dyke* it was impermissible for Defendants John/Jane Doe to subject Jessica Bowers to any form of punishment at all, let alone "cruel and unusual" punishment, which, as is detailed herein below, is what occurred in this instance.

31.     The particular conditions and restrictions of Jessica Bowers', detention, as detailed herein below against Defendants, John/Jane Doe, were either (1) imposed with an expressed intent to punish her or (2) not reasonably related to a legitimate nonpunitive government objective, in which case a jury may infer an intent to punish. *Martin v. Gentile*, 849 F.2d 863, 870 (4th Cir. 1988).

32.     As is detailed herein below, Jessica Bowers clearly establishes a due process violation for deliberate indifference to the serious medical needs of Jessica Bowers as it is legally inferred that the Defendants, John/Jane Doe, failed to respond to Jessica Bowers', known medical needs. *Miltier v. Beorn*, 896 F.2d 848, 853 (4th Cir. 1990).

### PRIMECARE LIABILTY

33.     Jessica Bowers re-alleges and incorporates by reference, as if fully set forth herein, all the allegations contained in the above paragraphs of the Amended Complaint.

34.     Jessica Bowers had been incarcerated at defendant's facilities on five separate occasions prior to her March 10, 2022, admission. All these admissions pertained to imminent concerns of withdrawal and addiction. Upon admission, each time, Jessica Bowers was found to have multiple substances in her system which varied from

admission-to-admission and included fentanyl, buprenorphine, marijuana, benzodiazepines, alcohol and MDMA.

35.     When Defendants completed the booking process for Jessica Bowers they recognized she had a long history of substance use disorder and consequently had numerous incarcerations related directly or indirectly to substance. Upon her admissions to ERJ, because of concerns of imminent withdrawal, as per the National Commission on Correctional Health Care and the State of West Virginia, Jessica Bowers was referred to the care of PrimeCare, the vendor of medical and psychiatric services at the Eastern Regional Jail for screening regarding substance use.

36.     Defendant PrimeCare supplied medical services to Jessica Bowers on five separate occasions prior to the March 10, 2022, admission. All these admissions pertained to imminent concerns of withdrawal and addiction. Upon admission, each time, Jessica Bowers was found to have multiple substances in her system which varied from admission-to-admission and included fentanyl, buprenorphine, marijuana, benzodiazepines, alcohol and MDMA.

37.     PrimeCare employee Ms. Chelsea McCrork made the following entry, found on page 239 of the PrimeCare PDF (PCPDF) in the early hours of March 11, 2022, finding previous heroin use by Jessica Bowers 12 hours before:

| 03-11-2022 12:11 am | Pt denies SI/HI. Pt states she has a rod in her femur and had an infection, Pt on doxycycline starting 09/2021 x6 months according to outside records on file from BMC. Pt states she fills at Walgreens and this is the last month on antibiotics. Pt states she was using "boot" prior to intake and that she has been up for 2 days. Pt states she used about a gram 12hrs ago. Pt having a panic attack on intake which she has hx of anxiety and panic attacks in the past. Pts vitals all stable with an elevated pulse. Pt unable to sit still during assessment, nurse notified and tasked to recheck in 1 hr. Sandwich and water given to help calm patient. PPD not placed due to pts movements tasked for when she is able to hold still. FS completed, Covid screen neg and forms all signed. No lice/scabies noted. Pt presents with discoloration of both wrists stating it is from the cuffs during arrest. |

SEE: Page 239 of PrimeCare Record, attached as **Exhibit 3.**

8

38.     PrimeCare Nurse McCrork further noted on Page 125 PCPDF:

| Problems recorded during prior incarcerations: | Opiate Withdrawal Z13.9 Encounter for screening, unspecified INTEGUMENTARY Heroin Withdrawal Benzo Withdrawal S72.92 Unspecified fracture of left femur T84.7 Infection and inflammatory reaction due to other internal orthopedic prosthetic devices, implants and grafts |
|---|---|

SEE: Page 125 of PrimeCare Record, attached as **Exhibit 4.**

39.     The PrimeCare Medical staff was fully aware at the time of Jessica Bowers'
admission to ERJ on March 10, 2022, that she had been using heroin and other
substances for years, indicative of recalcitrant substance use, yet the PrimeCare record
incorrectly states:

| When was the last time you used Heroin / Methadone? | Never |
|---|---|

SEE: Page 127 PCPDF – PrimeCare PDF, attached as **Exhibit 5**.

40.     None of the PrimeCare records show that Jessica Bowers had been
prescribed methadone.

41.     Jessica Bowers indicated she is not on a MAT (medication assisted
treatment) with an agent such as methadone or buprenorphine. SEE: Page 128 of the
PrimeCare PCPDF, attached as **Exhibit 6.**

42.     Jessica Bowers had a urine drug screen (UDS) on March 12, 2022, the time
of specimen collection was not recorded; the results were placed into the record at 8:42

PM and were **positive for Fentanyl**. <u>SEE</u>: Page 135 of the PrimeCare PCPDF, attached as **Exhibit 7.**

43.   On Page 135 of the PCPDF, LPN Christina Way recorded a telephone, verbal order from medical (Thaker) on March 13, 2022, at 11:52 AM to begin a t3 taper, a Tylenol with codeine taper as per protocol:

| Telephone / Verbal Order Form (Medical) | Orders Received | t3 taper | Way, LPN, Christina | 03-13-2022 11:52 am |
|---|---|---|---|---|
| Telephone / Verbal Order Form (Medical) | Length of order | per protocol | Way, LPN, Christina | 03-13-2022 11:52 am |

44.   Page 173 of the PCPDF: The Tylenol with codeine began on March 13, 2022, at 1:05 PM with 60 mg three times per day. Tapering started on March 15, 2022, and was completed March 20, 2022, with the last Tylenol with codeine at sleep time, 8:16 PM.

| 03-13-2022 1:05 pm | Received | [blank] | Haley, Courtney | Acetaminophen/Codeine #3 (Tylenol #3) 300/30mg 2 Tab By Mouth TID |
|---|---|---|---|---|
| 03-13-2022 10:06 pm | Received | [blank] | Scanlan, Jacqueline | Acetaminophen/Codeine #3 (Tylenol #3) 300/30mg 2 Tab By Mouth TID |
| 03-14-2022 7:10 am | Received | [blank] | Engle, Brenda | Acetaminophen/Codeine #3 (Tylenol #3) 300/30mg 2 Tab By Mouth TID |
| 03-14-2022 1:24 pm | Received | [blank] | Scott, Brandy | Acetaminophen/Codeine #3 (Tylenol #3) 300/30mg 2 Tab By Mouth TID |
| 03-14-2022 10:21 pm | Received | [blank] | Miller, LPN, megan | Acetaminophen/Codeine #3 (Tylenol #3) 300/30mg 2 Tab By Mouth TID |
| 03-15-2022 8:35 am | Received | [blank] | Way, LPN, Christina | Acetaminophen/Codeine #3 (Tylenol #3) 300/30mg 2 Tab By Mouth BID |
| 03-15-2022 9:49 pm | Received | [blank] | Bickford, Kelly | Acetaminophen/Codeine #3 (Tylenol #3) 300/30mg 2 Tab By Mouth BID |
| 03-16-2022 10:16 am | Received | [blank] | Levy, Kimberly | Acetaminophen/Codeine #3 (Tylenol #3) 300/30mg 2 Tab By Mouth BID |
| 03-16-2022 10:07 pm | Received | [blank] | Moon, LPN, Tara | Acetaminophen/Codeine #3 (Tylenol #3) 300/30mg 2 Tab By Mouth BID |
| 03-17-2022 11:42 am | Received | [blank] | Way, LPN, Christina | Acetaminophen/Codeine #3 (Tylenol #3) 300/30mg 1 Tab By Mouth BID |
| 03-17-2022 6:40 pm | Received | [blank] | Moon, LPN, Tara | Acetaminophen/Codeine #3 (Tylenol #3) 300/30mg 1 Tab By Mouth BID |
| 03-18-2022 9:15 pm | Received | [blank] | Scanlan, Jacqueline | Acetaminophen/Codeine #3 (Tylenol #3) 300/30mg 1 Tab By Mouth BID |
| 03-19-2022 10:03 pm | Received | [blank] | Moon, LPN, Tara | Acetaminophen/Codeine #3 (Tylenol #3) 300/30mg 1 Tab By Mouth QHS |
| 03-20-2022 8:16 pm | Received | [blank] | Miller, LPN, megan | Acetaminophen/Codeine #3 (Tylenol #3) 300/30mg 1 Tab By Mouth QHS |

45.     A scheduled follow-up with a provider was not planned despite implementation of an opioid detoxification protocol; follow-ups were left to being PRN (as needed.)

| Telephone / Verbal Order Form (Medical) | Follow up | | prn | | Way, LPN, Christina | 03-13-2022 11:52 am |
|---|---|---|---|---|---|---|

46.     The next set of notes appear on March 15, 2022, starting at 7:35 PM. There is no indication why there had been no interval notes and why they seemed to delay starting assessments for opioid withdrawal 2.5 days after they had orders since assessing for withdrawal a critical element in their written detoxification protocol:

| 3648752e | COWS / CIWA (Ar) / CIWA (B) | COWS Score: In addition enter the COWS score in the comment of the vital sign section | 5 | Bickford, Kelly | 03-15-2022 7:35 pm |
|---|---|---|---|---|---|
| 3648752e | COWS / CIWA (Ar) / CIWA (B) | COWS Withdrawal Scale: | 5-12 Mild | Bickford, Kelly | 03-15-2022 7:35 pm |

47.     On Page 136 of the PCPDF, Ms. Bickford concluded Jessica Bowers was going through mild opiate withdrawal. Please see the appendix of this report for the COWS questionnaire and how it is graded for withdrawal.

48.     On Page 137 of the PCPDF, LPN Tara Moon on March 16, 2022, at 10:45 PM noted the COWS scale now a one and thus no clinical evidence of an opiate withdrawal:

| 3648752e | COWS / CIWA (Ar) / CIWA (B) | COWS Score: In addition enter the COWS score in the comment of the vital sign section | 1 | Moon, LPN, Tara | 03-16-2022 10:45 pm |
|---|---|---|---|---|---|

49.     On Page 183 of the PCPDF on March 17, 2022, there is an indication she had an active infection in her right arm and a request made for a medical evaluation. A medical provider wanted to see her that day; no COWS entries made for March 17,

11

2022:

| | |
|---|---|
| Appointment Scheduled Date | 03-17-2020 |
| Appointment Created Date | 03-17-2020 2:43 am |
| Appointment Description | Boil under right arm; requesting to be seen by provider- per provider, she wants to see this Pt today. |
| Appointment Category | NP/PA |
| Priority (1=High, 5=Low) | 1 |

50.     From Page 183 of the PCPDF: Nurse practitioner Jones evaluated Jessica Bowers on March 17, 2022, at an unknown time. There are no medical notes available for this encounter, so it is unclear where the boil was located, its cause and how it was treated.

51.     The next note chronologically is on Page 239 of the PCPDF written by LPN Christina Way on March 18, 2022, at 5:32 PM:

| | |
|---|---|
| 03-18-2022 5:32 pm | pt has exhibited unusual behaviors the last 2 days. Yesterday this nurse believed pt was having difficulty with detox process and discussed this with provider who allowed 1x dose of Zofran 4 mg im. Pt was not cooperative, twisting and turning, she stated she wanted it but then stated she was afraid of needles. Pt laid on bunk and held this nurse's leg and was able to tolerate injection. Pt reported that it did help. Today pt's behavior was not improved. She did not appear dehydrated either day but stated that she had vomited on both days. Today this nurse felt another intervention may be needed until girls in the same section reported that pt had been taking drugs in the section. Security was notified that pt needed to be moved to intake for better observation of her behaviors. |

52.     LPN Christina Way reported difficulty with the detoxification process and was concerned that illicit drugs taken by Jessica Bowers. She decided it was critical for medical reasons to have Jessica Bowers transferred to a unit where there was better observation.

53.     A physician or advanced practice clinician did not evaluate Jessica Bowers notwithstanding these documented concerns and the known active infection in her right arm and the historical left hip abscess.

54.     No documented determination made by Ms. Way or other PrimeCare staff on March 18, 2022, if Jessica Bowers was having severe withdrawal requiring transfer

to a hospital for aggressive lifesaving treatment. No COWS scores were documented in the record.

55. On Page 239 of the PCPDF, over the next three days March 19, March 20, and Match 21, 2022, Jessica Bowers appeared to be stable. Corresponding medical records as to her medical status have not been provided.

| 03-19-2022 7:00 am | Housed in intake for observation No complaints thru the night Rested on cot ,cooperative | Engle, Brenda | Medical Staff | Medical Note |
|---|---|---|---|---|
| 03-20-2022 5:04 am | Housed in in take for observation and detoxing Has rested on cot thru the night with no complaints voiced Pending chow this am | Engle, Brenda | Medical Staff | Medical Note |
| 03-21-2022 2:28 am | Housed in the Intake for Observation. Rested on bunk during the night. No s/s of distress/depression. No complaints voiced, no SI/HI voiced or reported. Will continue to monitor. | Marshall, Mortricia | Medical Staff | Misc. Note |

56. From Page 239 of the PCPDF: On March 22, 2022, at 3:31 AM, Brandy Scott made observations without conclusions:

| 03-22-2022 3:31 am | Pt housed in intake for observation. Pt laying on bunk face down with her feet on the wall. There is trash all over the cell floor and what appears to be ripped up styrofoam plates and cups on her bunk and cell floor. Will cont. to monitor. |
|---|---|

57. From Page 239 of the PCPDF: Similarly, Mortricia Marshall made observations and recorded them on March 23, 2022, and March 24, 2022:

| 03-23-2022 7:33 am | Housed in Intake for observation. Rested on bunk most of the night. Ate breakfast. Trash continues to be all over floor. No s/s of distress/depression. No complaints voiced, no SI/HI voiced or reported. Will continue to monitor. | Marshall, Mortricia | Medical Staff | Misc. Note |
|---|---|---|---|---|
| 03-24-2022 | Housed in Intake for observation. Rested on bunk most of night. No s/s of distress/depression, No complaints voiced, no SI/HI voiced or reported. Will continue to monitor. | Marshall, Mortricia | Medical Staff | Misc. Note |

58. On Page 255 of the PCPDF, mental health provider Christin Bell identified that Jessica Bowers had <u>no orientation</u> and psychomotor agitation:

13

| Call Date | 03-24-2022 12:37 pm |
|---|---|
| Clinician Name | Christin Bell |
| Requested by Patient? | Yes |
| Subjective | 03-24-2022 12:37 pm - Bell, Christin : MH attempted to interview Pt in intake around 1058, at request of custody. Pt provides intermittent engagement in interview. When asked if she had Hx of MH Tx Pt replies, "I really have." Pt stares blankly at this MH provider when assessing for suicidality. MH provider offered to return at late time to interview Pt replies, "you promise." |
| Objective | 03-24-2022 12:37 pm - Bell, Christin : Pt is alert and appears to have no orientation. Pt presents with psychomotor agitation. |
| Assessment | 03-24-2022 12:37 pm - Bell, Christin : defer at this time |
| Plan | 03-24-2022 12:37 pm - Bell, Christin : MH will attempt to reinterview Pt at another time |

59.     However, despite no orientation and psychomotor agitation, there are no notes found after Ms. Bell's assessment on March 24, 2022, and there are no entries in the PrimeCare PDF for March 25, 2022.

60.     From Page 240 of the PCPDF: The next notation in the record is by Brenda Engle and is from March 26, 2022, at 6:53 AM:

| 03-26-2022 6:53 am | Housed in intake for observation Quiet on her cot all night Offered no complaints this am Pending chow |
|---|---|

61.     From Page 240 of the PCPDF: Although the next entry by Kelsy Shank is time stamped for March 27, 2022, the note indicates it was a late entry for the previous day, March 26, 2022:

| 03-27-2022 6:26 am | Late entry for 3/26/22 @ 2100- Pt has been laying on floor face down without any pants on. Encouraged multiple times to get up and get dressed. Cell with empty trays throughout. This writer and Lt Jordan into cell to clean up trash and food scattered throughout. Assist pt up. Pt assisted up by this writer and Lt Jordan to bunk. Pt reports bad leg pain to bil legs. One time dose of Tylenol given and Gatorade provided. VS WNL. Pt assisted to laying position and covered up with blankets, pt visible goosebumps to bil arms reports cold. Educated not to lay on the ground voiced understood. Laid down and rested w/ eyes closed. |
|---|---|

62.     Despite the unusual behaviors, the known boil (abscess), and the history of MRSA infections, an advanced practice medical professional (APRN or MD) was neither alerted nor summoned by Kelsy Shank or other PrimeCare employee.

14

63.     Authored by Brenda Engle is the next chronological entry on March 27, 2022, at 6:44 AM on Page 240 of the PCPDF:

| 03-27-2022 6:44 am | Housed in intake for observation with detoxing This am after medication for pain states she feels better but she is standing at the door picking her milk carton apart and does other bizarre behavior like that. She ate her morning chow. Has moderate tremors of upper extremities She can converse but she struggles to create a lucid conversation Will continue to monitor |
|---|---|

64.     Although clearly still following a detoxification protocol there are no COWS entries. Jessica Bowers is also noted to have tremors and an **abrupt change in mental status**. Despite the change in mental status an advanced practice medical professional (APRN or MD) was not summoned. Having an abrupt change in     mental status is a medical urgency and with medical certainty requires an evaluation by a licensed provider promptly.

65.     At this juncture, a change in mental status could be from a wide variety of medical, metabolic, and neurological conditions, many of which can be life threatening. However, special consideration given the clinical circumstances necessary regarding opioids, opioid withdrawal, other drugs, and sepsis.

66.     From Page 240 of the PCPDF: The next chronological entry is about 24 hours later. Lisa Beard recorded further bizarre behaviors:

| 03-28-2022 7:10 am | Housed in intake for observation. Pt has been up most of the night sitting or laying on bunk, randomly screaming out. Pt chews on Styrofoam trays and milk cartons. Encouraged not to do this by staff. Pt cont to scream out during breakfast. Eats with her hands. No complaints voiced. Multiple attempts to get pt up from bunk to lay on her mat w/ no success. Will cont to monitor. |
|---|---|

67.     Despite the documented unusual behaviors an advanced practice medical professional (APRN or MD) was not summoned to see Jessica Bowers urgently, but an appointment was scheduled for the next day despite PrimeCare employee Ashley Fisher recognizing the clinical situation as a high priority.

68.     On Page 229 of the PCPDF an entry was made at 11:30 AM March 28, 2022, for a doctor's appointment the next day, on March 29, 2022, for "abnormal behaviors" and a <u>possible drug</u> induced psychosis:

| Appointment Scheduled Date | 03-29-2022 |
|---|---|
| Appointment Created Date | 03-28-2022 11:30 am |
| Appointment Description | Please see patient for possible drug induced psychosis. |
| Appointment Category | Doctor |
| Priority (1=High, 5=Low) | 1 |

69.     Despite the unusual behaviors and change in mental status another ~18 hours pass until the next entry into the record. There is no indication that any advanced medical services provided to help determine why Jessica Bowers was having her abrupt change in mental status at that time.

70.     Authored by Morticia Marshall, the next chronological entry was on March 29, 2022, at 5:08 AM on Page 240 of the PCPDF:

| | |
|---|---|
| 03-29-2022 5:08 am | Call from Intake to access Pt. Spo2 94% HR apical 86 Radial 76 BP 148/88 RR 20 Prior to going to Intake Officer stated that her chin was placed on the bunk and her body was on the floor and face purple. <u>Pt not responding to verbal commands.</u> Ammonia caps place in nose and it did not bother her. Call placed to the on call MD DR. Baldera and he said send to the ER for evaluation. |

71.     Given the purple face, with a reasonable degree of medical certainty Jessica Bowers had been hypoxic and hypo-ventilating before discovery by staff.  Although calling 911 for emergency transport correct, if oxygen available, Dr. Baldera should have ordered it along with continuous pulse oximetry.

72.     Emergency services notified of the 911 call on March 29, 2022, at 5:23 AM. EMS arrived at the WV Eastern Regional Jail at 5:40 AM and were with Jessica Bowers by

5:42 AM.

73.     At the WV Eastern Regional Jail, EMS staff interviewed the jail and PrimeCare staffs and began providing services as detailed in the EMS narrative. In addition to recording information told to them by the staff, they made their own observations (See A in EMS narrative) of Jessica Bowers' face initially being purple with circumoral cyanosis, supporting that Jessica Bowers had a hypoxic event for an unknown amount of time and still was hypoxic when they arrived.

**Narrative:** Dispatched, responded ALS for a sick person. CHART:

(C) ALOC, Possible Anoxic Injury

(H) Arrived on scene to find the patient seated in cell of ERJ, awake but not responsive to voice. Staff advise that the patient was found face down with her neck underneath the bench in a contorted position, states that her face was purple and she was gasping for breath. Staff advise the patient was moved to a supine position and her neck was placed back into anatomical position, states the patient woke up and sat up but has not been acting appropriately since that time. Staff advise the patient is 10 days into her stay @ the ERJ, states that she has had little to eat or drink and was complaining of abdominal pain yesterday. Info packet from jail advises the patient has a history of benzo and opiate withdrawal.

(A) Obtunded female seated supine in cell w/ a blank stare. Face was initially purple w/ circumoral cyanosis. Neck tenderness is noted w/ palpation. Skin pale, dry. Mucous membranes appear dry, cracked. Pupils E&R @ 3mm. Normal work of breathing, lungs were diminished. No JVD, no edema.

(R) Manual cervical spine immobilization was performed prior to the application of a collar, PMSx4 intact before & after. Cardiac monitor was applied which shows Sinus Tachycardia. 12 lead was obtained showing the same w/o ST segment changes. IV access was difficulty given the ERJ's handcuffs and shackles which they state cannot be moved or touched, #20g IV was started in the LH.

(T) Patient was monitored enroute to the hospital, no change in mental status was noted. 250mL of NS was administered throughout care. Report to RN @ bedside. Patient is unable to sign, transfer of care. Crew clear.

| 03-29-2022 6:14 am | Pt transported via EMS. Report given to Rebecca, RN at BMC-ER. |
|---|---|

74.     The EMS run sheet shows they left the WV Eastern Regional Jail at 6:00 AM (although the PrimeCare entry from Page 240 of the PCPDF says 6:14 AM) and arrived at the hospital at 6:07 AM.

75.     Jessica Bowers was transferred to Berkely Medical Center (BMC); 2543 pages of medical records cover her admission from March 29, 2022, until discharge to home with a family member May 15, 2022.

76.     On page 30 of the BMC records an admitting history written by Dr. David

Deuell summarizes Jessica Bowers' condition on arrival:

**Chief Complaint:** Altered Mental Status

**HISTORY OF PRESENT ILLNESS**

Jessica Bleu Bowers, date of birth 6/21/1991, is a 30 y.o.female who presents to the Emergency Department with altered mental status. Patient arrives in the department via EMS from ERJ. EMS states patient was found purple and unresponsive at ERJ on a bench. Upon arrival at ERJ, EMS placed patient on non-rebreathe mask. Patient's heart rate was in the 150's and decreased to 103's after oxygen. Patient does not answer questions or follow commands. EMS states patient was on opioids/benzos prior to incarceration. Patient is slightly more alert upon arrival here.

77.     During the hospital stay it was determined that Jessica Bowers had severe MRSA sepsis from skin lesions, a pulmonary embolus, hepatitis C, abnormal liver functions and a brain injury pattern described as leukoencephalopathy. She was intubated, placed on a ventilator, and admitted to the hospital ICU. On page 5 of the BMC record, documentation shows in addition to the life- threatening medical conditions noted, while she was a ward of the WV Eastern Regional Jail, she was poisoned from Fentanyl:

Poisoning by fentanyl or fentanyl analogs, accidental (unintentional) initial encounter (CMS HCC)

78.     On page 27 of the BMC record there is a summary of Jessica Bowers' hospital course:

**REASON FOR HOSPITALIZATION AND HOSPITAL COURSE:** This is a 30 y.o., female admitted with MRSA bacteremia due to IV drug abuse and the possible infective endocarditis,R sided PE,  blood cultures were positive for MRSA.. History of drug abuse , no use of cocaine , benzodiazepines , and opioids in the past who presents with altered mental status from ERJ.

Dr. Connie Smith consulted.  Echo showed EF of 60-65% with no valvular abnormality, brain MRI was negative for any septic emboli.  Multiple excoriation marks are noted on skin which can be the source of MRSA infection.  Completed IV antibiotics course of 2 weeks, last day was April 13th.  Repeat blood culture showed no growth to date.

**Altered mental status due to fentanyl abuse, social withdrawal leukoencephalopathy.**  Her urine drug screen was positive for fentanyl.  Patient lacks capacity.  Healthcare surrogate is her mother.  Her mother will be her primary care giver.

Abnormal LFTs, IV drug abuse increases risk for hepatitis, LFTs are improving.  She is hepatitis-C positive with high viral loads. Need to follow up with ID.

79.     Jessica Bowers was left with marked cognitive and physical incapacity and no longer can care for herself. She has been followed as an outpatient at BMC and by Eastern Panhandle Mental Health Services.

80.     From page 18 of 35 pages from the Panhandle Mental Health Services record from the June 21, 2022, Tele-health visit:

The patient was recently admitted to The Berkeley Medical Center due to an overdose. She was in jail and she used illicit substances and was taken to the nearest hospital due to altered mental status. Since the overdose the patient has had probelms with her memory and her appetite has increased significantly where she had gained a lot of weight.

The patient is diagnosed with Adhd.

The patient is diagnosed with a Substance use disorder (opioids, cannabis).

81.     Jessica Bowers was seen in follow up by WVU Neurology, APRN Theresa Triggs on August 5, 2022 (BMC records page 59):

**Information obtained from**: patient and mother
**Chief Complaint:** New Patient (Memory issues )

**HPI:** Jessica Bleu Bowers  is a 31 y.o., White female who presents with h/o overdose of opiate and intubation in ICU and continued memory issues since that time
She had hip surgery in 2020, is filing for disability, broke femur, hip surgery, is not on any pain medication at this time; she is on topiramate for anxiety, can't sleep well; she is only taking this at night

82.     APRN neurologist Triggs concluded:

| 1. | **Opiate dependence, continuous (CMS HCC)** | **F11.20** |
|----|---------------------------------------------|------------|
| 2. | Memory deficit | R41.3 |
| 3. | Generalized anxiety disorder | F41.1 |
| 4. | Toxic metabolic encephalopathy | G92.8 |

-h/o overdose injury to the brain
-repeat MRI Brain
-REALLY work the brain
-find a daily goal

## PRIMECARE BREACHES OF MEDICAL STANDARDS

83.     Jessica Bowers re-alleges and incorporates by reference, as if fully set forth herein, all the allegations contained in the above paragraphs of the Amended Complaint.

84.     Jessica Bowers was having bizarre and unusual behaviors starting on March 18, 2022. The etiology of the bizarre behaviors was unknown, but there was a concern she may have taken illicit drugs while incarcerated despite supervision.

85.     Jessica Bowers was transferred to a unit where better observation could ensue. However, despite better observation, Jessica Bowers was found hypoxic, cyanotic, and not responsive on March 29, 2022. No one knows how long she was lying there on the floor unresponsive, hypoxic, and cyanotic despite the escalation to a higher level of observation.

86.     The PrimeCare staff documented serially, changes in mental status and bizarre behavior but did not initiate medical investigations to determine why Jessica Bowers was behaving strangely. By March 20, 2022, they had completed the codeine taper, so the bizarre behavior could not be attributed to pre-incarceration heroin.

87.     On March 26, 2022, despite the unusual behaviors, the known boil (skin infection), the goosebumps and feeling cold, an advanced practice medical professional (APRN or MD) was not summoned by Kelsy Shank or other PrimeCare employee.

88.     On March 27, 2022, Jessica Bowers was noted to have tremors and an abrupt change in mental status. Despite the change in mental status an advanced practice medical professional (APRN or MD) was not summoned. Having an abrupt change in mental status was a medical urgency and required an evaluation by a licensed provider promptly.

89.     Jessica Bowers' bizarre behaviors continued March 28, 2022. Despite the documented unusual behaviors an advanced practice medical professional (APRN or

20

MD) was not summoned. Notwithstanding the unusual behaviors and change in mental status, about another 24 hours pass until the next entry into the record.

90.     The next entry on March 29, 2022, Jessica Bowers was found on the floor with her chin on the bunk. It's not clear how long she had been there, but it had been long enough for her to have become cyanotic. So, despite the alleged increased observation, the staff missed Jessica Bowers' physical and respiratory collapse; did not notice she was lying on the floor.

91.     Given the purple face, with a reasonable degree of medical certainty Jessica Bowers had been hypoxic and hypo-ventilating before discovery by the staff.

92.     Although calling 911 for emergency care and transport to a hospital correct, at a minimum Dr. Baldera should have ordered oxygen along with continuous pulse oximetry to be start immediately upon discovery of Jessica Bowers' hypoxia.

93.     The PrimeCare staff not starting oxygen immediately upon discovery that Jessica Bowers needed oxygen, was a deviation from acceptable medical practice, since not providing oxygen delayed receipt of oxygen at least another nineteen minutes; nineteen more minutes with a brain not getting adequate oxygen.

94.     To a reasonable degree of medical certainty, it was a deviation from acceptable medical practice for the PrimeCare team to not aggressively assess Jessica Bowers' abrupt change in mental status on March 27, 2022. SEE: Certificate of Merit, attached as **Exhibit 8.**

95.     To a reasonable degree of medical certainty, PrimeCare's delay in getting Jessica Bowers evaluated for her change in mental status delayed diagnosis of septicemia, pulmonary embolism, hypoxia, and illicit use of Fentanyl*, all of which contributed to the respiratory collapse requiring EMS services March 29, 2022. SEE: **Exhibit 8.**

21

96.    Fentanyl consumed by Jessica Bowers prior to incarceration, would no longer be found in her plasma or urine. Thus, the Fentanyl found in urine at BMC was consumed, with a reasonable degree of medical certainty, no more 3 to 4 days prior to admission to BMC, between March 25, 2022, to March 29, 2022, and with a reasonable degree of medical certainty, responsible for the fentanyl poisoning diagnosed at BMC. SEE: **Exhibit 8.**

97.    If Jessica Bowers was evaluated on March 27, 2022, for her deteriorating mental status, she would have received medical care for her progressing septicemia, pulmonary embolism, hypoxia, and illicit use of Fentanyl if it was in her system at that time, which with a reasonable degree of medical certainty, would have averted the crisis of March 29, 2022, at the WV Eastern Regional Jail necessitating EMS services. SEE: **Exhibit 8**.

98.    If Jessica Bowers was evaluated on March 27, 2022, for her deteriorating mental status and received medical care for her progressing septicemia, pulmonary embolism, hypoxia, and illicit use of Fentanyl, with a reasonable degree of medical certainty, she would not have had the hypoxic insult to her brain on March 29, 2022, and would not be afflicted with permanent neurocognitive deficits. SEE: **Exhibit 8**.

99.    The PrimeCare staff not starting oxygen immediately upon discovery that Jessica Bowers needed oxygen on March 29, 2022, was a deviation from acceptable medical practice, which with a reasonable degree of medical certainty, contributed adversely to a hypoxic brain injury and long- term neurocognitive dysfunction. SEE: **Exhibit 8.**

100.    To a reasonable degree of medical certainty, Fentanyl was brought into the jail despite the supervision and protection of the staff of the WV Eastern Regional

22

Jail and PrimeCare and was used by Jessica Bowers between March 25, 2022, to March 29, 2022. <u>SEE</u>: **Exhibit 8**.

101.   To a reasonable degree of medical certainty, based on the medical record evidence, Jessica Bowers suffered an opioid overdose and poisoning at the WV Eastern Regional Jail from Fentanyl as documented in the BMC records between March 25, 2022, to March 29, 2022. <u>SEE</u>: **Exhibit 8**.

102.   To a reasonable degree of medical certainty, as a complication of the Fentanyl overdose and poisoning, in combination with septicemia and pulmonary embolism, Jessica Bowers suffered a hypoxic injury to her brain with a long-term neurocognitive injury. <u>SEE</u>: **Exhibit 8**.

103.   To a reasonable degree of medical certainty, some of Jessica Bowers' neurocognitive injury is permanent and life altering. <u>SEE</u>: **Exhibit 8**.

104.   To a reasonable degree of medical certainty, if it were not for the deviations from acceptable medical care by the PrimeCare staff and the neglect of the WV Eastern Regional Jail staff allowing illicit fentanyl to be available, Jessica Bowers would have averted respiratory failure and hypoxia on March 29, 2022, at the WV Eastern Regional Jail necessitating EMS services. <u>SEE</u>: **Exhibit 8**.

**DEFENDANT JOHN/JANE DOE DELIBERATELY INDIFFERENT CONDUCT**

105.   Jessica Bowers re-alleges and incorporates by reference, as if fully set forth herein, all the allegations contained in the above paragraphs of the Amended Complaint.

106.   The conduct of John/Jane Doe Defendants in permitting persons to bring Fentanyl into the ERJ is a violation of standards applicable to correctional facilities and was a proximate cause and/or contributing factor to the injuries suffered by Jessica Bowers, because Plaintiff Jessica Bowers was a drug addict who did not receive help to

23

withdraw from her drug dependency in a manner that complied with the basic standards applicable to all defendants.

107.    This conduct by John/Jane Doe Defendants showed deliberate indifference to the medical needs of Jessica Bowers and the unlawfulness of this conduct by Defendants was sufficiently clear so that every reasonable public official in their position would understand that what they were doing was unlawful.

### NEGLIGENCE AND VIOLATIONS OF CONSTITUTIONAL RIGHTS

108.    Jessica Bowers re-alleges and incorporates by reference, as if fully set forth herein, all the allegations contained in the above paragraphs of the Amended Complaint.

109.    The actions and/or inactions of the Defendants as described herein above constitute negligence and/or violations of Jessica Bowers 's Constitutional rights and subjects them to liability to Jessica Bowers under West Virginia and Federal Law, as stated herein above. Specifically, PrimeCare has violated medical standards as set forth in the report of Dr. Lloyd Saberski (**Exhibit 8**) and John/Jane Doe Defendants violated Jessica Bowers 's constitutional rights through their unlawful and deliberately indifferent conduct as set forth herein above.

### VIOLATIONS OF THE WEST VIRGINIA STATE AND U.S. CONSTITUTIONS

110.    Jessica Bowers re-alleges and incorporates by reference, as if fully set forth herein, all the allegations contained in the above paragraphs of the Amended Complaint.

111.    The actions of John/Jane Doe Defendants violated the constitutional rights guaranteed to Jessica Bowers under the Fourteenth Amendment to the U.S. Constitution and Article III, Sections l, 5, 10 and 14 and Article XII, Section 1 of the West Virginia Constitution.

112.    With respect to John/Jane Doe, Jessica Bowers specifically only seeks recovery up to the limits of the applicable insurance policies.

## NEGLIGENT HIRING, RETENTION AND SUPERVISION

113.    Jessica Bowers re-alleges and incorporates by reference, as if fully set forth herein, all the allegations contained in the above paragraphs of the Amended Complaint.

114.    Defendant PrimeCare was negligent in the hiring and/or retention of its employees who failed to provide medical care to Jessica Bowers at the standard of care. PrimeCare failed to properly supervise its employees to ensure that the wrongful conduct described herein above would not occur.

115.    PrimeCare is vicariously for all negligence, medical professional negligence, tortious conduct, and actions/inactions of its employees that contributed to or proximately caused the injuries and death of Jessica Bowers and damages to Jessica Bowers.

116.    PrimeCare's actions were willful, wanton and/or undertaken with reckless disregard and/or reckless indifference to the rights of Jessica Bowers , entitling Jessica Bowers to punitive damages in an amount to be determined by the jury.

117.    Such conduct by Defendants also entitles Jessica Bowers to be awarded her attorneys' fees and costs.

## WAIVER OF GOVERNMENTAL IMMUNITY AND PUNITIVE DAMAGES

118.    Jessica Bowers re-alleges and incorporates by reference, as if fully set forth herein, all the allegations contained in the above paragraphs of the Amended Complaint.

119.    The conduct of John/Jane Doe Defendants described herein above, including their flagrant disregard of Jessica Bowers medical needs, was willful, wanton, reckless, fraudulent, oppressive, and outrageous under any definition of those terms.

118.     Under common law, the case of *Parkulo v. West Virginia Board of Probation and Parole and the West Virginia Division of Corrections*, 199 W.Va. 161, 483 S.E.2d 507 (1997), Syllabus Point 8, there is no immunity for an executive official whose acts are fraudulent, malicious, or otherwise oppressive. In this matter, the John/Jane Doe Defendants' conduct has been fraudulent, malicious and/or oppressive.

119.     As to John/Jane Doe Defendants, there is no immunity, cap on damages, or other tort damage limitation applicable to Jessica Bowers' claims, including, but not limited to, punitive damages and all other forms of damages available to Jessica Bowers against any non-governmental entity.

## PRAYER FOR RELIEF

WHEREFORE, your Plaintiff, Jessica Bowers, prays for the following relief:

a)     Damages, as set forth in this Amended Complaint, and all those allowed by law, including, but not limited to: compensatory damages in a sum consistent with the injuries to Jessica Bowers; medical bills, lost wages, pain and suffering, loss of enjoyment of life, emotional distress, economic damages, pre and post judgment interest, punitive damages (as allowed by law and against such parties as those are allowed by law), and all other recoverable damages, in an amount to be determined by the jury;

b)     Judgment for damages against all Defendants on the theory of vicarious and strict liability for the actions of their employees, agents, and representatives that proximately caused or contributed to the injuries of Jessica Bowers ;

c)     Jessica Bowers also seeks judgment in a punitive amount, against only the nongovernmental defendants, which will deter the defendant(s) from again engaging in such wanton, reckless, and intentional and/or negligent actions against similarly situated individuals, and against governmental defendants to the extent that immunity has been waived or deemed as a matter of law not to apply;

d)     Prejudgment interest and post-judgment interest as provided by law;

26

e)      Attorney fees and costs; and such further recovery and relief as this court may deem just and equitable.

f)      With respect to John/Jane Doe Defendants, Jessica Bowers specifically seeks recovery only up to the limits of applicable insurance policies.

**PLAINTIFF DEMANDS A TRIAL BY JURY ON ALL ISSUES SO TRIABLE.**


                                        s//Christopher J. Heavens
                                  Of Counsel for Plaintiff


**HEAVENS LAW FIRM, PLLC**
Christopher J. Heavens (WV Bar No. 5776)
2438 Kanawha Boulevard, East
Charleston, West Virginia 25311
Phone:          304-346-0464
Fax:            304-345-5775
e-mail:         chris@heavenslawfirm.com

27

**IN THE CIRCUIT COURT OF BERKELEY COUNTY, WEST VIRGINIA**

JESSICA B. BOWERS,

       Plaintiff

v.                                        Civil Action No. 22-C-<u>272</u>
                                         Judge Faircloth

STATE OF WEST VIRGINIA,
DEPARTMENT OF HOMELAND
SECURITY, DIVISION OF CORRECTIONS
AND REHABILIATION, a West Virginia State Agency,
and JOHN/JANE DOE, unknown employees
or agents of the above entity, in their individual
capacities, and as employees or agents of the above entities.
PRIMECARE MEDICAL OF WEST VIRGINIA, INC.,
a West Virginia Corporation; PRIMECARE MEDICAL, INC.,
a foreign corporation;

       Defendants.

### CERTIFICATE OF SERVICE

I, Christopher J. Heavens, hereby certify that, on the 19th day of April 2023, I electronically filed the foregoing **AMENDED COMPLAINT** with the Clerk of the Court using the electronic filing system, which will send notification of such filing to the below-named persons:

       William E. Murray, Esq.
       Jaden P. Rhea, Esq.
       ANSPACH MEEKS ELLENBERGER LLP
       500 Virginia Street, East, Suite 525
       Charleston, West Virginia 25301
       *Counsel for the Defendant*

                              <u>s//Christopher J. Heavens</u>
                                   Of Counsel for Plaintiff

Christopher J. Heavens (WV Bar No. 5776)
**HEAVENS LAW FIRM, PLLC**
2438 Kanawha Boulevard East
Charleston, West Virginia 25311
Phone:         304-346-0464
Fax:           304-345-5775
e-mail: chris@heavenslawfirm.com

E-FILED | 4/19/2023 11:43 AM
CC-02-2022-C-272
Berkeley County Circuit Clerk
Michelle R. Schoppert



CITY HOSPITAL                 Bowe
2500 Hospital Drive           MRN
Martinsburg WV 25401-3402     Adm 3/29/2022, D/C 3/15/2022

---

## 03/29/2022 - ED to Hosp-Admission (Discharged) in Berkeley Medical Center 5F (continued)

### Visit Information (continued)

| | | | |
|---|---|---|---|
| Health, Shenandoah Community | EXTERNAL | In 3 days | 99 TAVERN ROAD Martinsburg WV 25401 304-263-4999 |

### Admission Diagnoses / Reasons for Visit (ICD-10-CM)

| Code | Description | Comments |
|---|---|---|
| A41.02 | Sepsis due to methicillin resistant Staphylococcus aureus (CMS HCC) | |

### Final Diagnoses (ICD-10-CM)

| Code | Description | POA | CC | HAC | Affects DRG |
|---|---|---|---|---|---|
| A41.02 [Principal] | Sepsis due to methicillin resistant Staphylococcus aureus (CMS HCC) | Yes | No | | Yes |
| I26.90 | Septic pulmonary embolism without acute cor pulmonale (CMS HCC) | Yes | MCC | | Yes |
| I33.0 | Acute and subacute infective endocarditis | Yes | MCC | | No |
| G93.41 | Metabolic encephalopathy | Yes | MCC | | No |
| F11.20 | Opioid dependence, uncomplicated (CMS HCC) | Yes | CC | | No |
| J98.2 | Interstitial emphysema (CMS HCC) | Yes | No | | No |
| T40.411A | Poisoning by fentanyl or fentanyl analogs, accidental (unintentional), initial encounter (CMS HCC) | Yes | No | | No |
| B19.20 | Unspecified viral hepatitis C without hepatic coma | Yes | No | | No |
| F41.9 | Anxiety disorder, unspecified | Yes | No | | No |
| J45.909 | Unspecified asthma, uncomplicated | Yes | No | | No |
| F14.10 | Cocaine abuse, uncomplicated (CMS HCC) | Yes | No | | No |
| K21.9 | Gastro-esophageal reflux disease without esophagitis | Yes | No | | No |
| R74.8 | Abnormal levels of other serum enzymes | Yes | No | | No |
| Z20.822 | Contact with and (suspected) exposure to covid-19 | Yes | No | | No |
| F17.210 | Nicotine dependence, cigarettes, uncomplicated | Yes | No | | No |
| Z79.899 | Other long term (current) drug therapy | Exempt from POA reporting | No | | No |
| Z65.1 | Imprisonment and other incarceration | Exempt from POA reporting | No | | No |

### Reason for Visit

#### Chief Complaint
- Altered Mental Status

#### Visit Diagnoses
- Pulmonary embolism (CMS HCC) [I26.99]
- Infective endocarditis [I33.0]
- **Drug overdose (primary) [T50.901A]**
- Leukoencephalopathy [G93.49]

#### Hospital Problems

| Name | Code | Date Noted | Date Resolved | Present on Admission? |
|---|---|---|---|---|
| **Drug overdose (primary)** | T50.901A | 03/29/2022 | — | Yes |
| Anxiety disorder | F41.9 | 11/14/2016 | — | Yes |

EXHIBIT
7

E-FILED | 4/19/2023 11:43 AM
CC-02-2022-C-272
Berkeley County Circuit Clerk
Michelle R. Schoppert

# STATE OF WEST VIRGINIA

# At CHARLESTON

# EXECUTIVE ORDER NO. 5-22

# By the Governor

**WHEREAS,** the number of correctional officers available to staff juvenile and adult detention and correctional facilities is less than what is recommended to operate the State's juvenile and adult detention and correctional facilities; and

**WHEREAS,** any shortage of correctional officers limits the ability to properly supervise the State's incarcerated individuals; and

**WHEREAS,** without proper supervision of incarcerated individuals, there may be a danger to the public, a danger to the correctional officers and administrative staff, and a danger to incarcerated individuals themselves; and

**WHEREAS,** excessive amounts of overtime for existing correctional officers are not conducive to safe working practices and environments; and

**WHEREAS,** the Secretary of Homeland Security, the Adjutant General of the West Virginia National Guard, and the Division of Personnel have worked to find a solution that helps provide the needed workforce; and

**WHEREAS,** it is imperative to properly staff and control this State's juvenile and adult detention and correctional facilities, and until there is proper staffing to achieve a safe environment within our juvenile and adult detention and correctional facilities, a State of Emergency exists; and



**NOW, THEREFORE, I, JIM JUSTICE,** by the authority vested in me as the Governor of the State of West Virginia, do hereby **ORDER** that:

1. A State of Emergency exists in West Virginia as it pertains to the staffing level of our juvenile and adult detention and correctional facilities; and

2. The Adjutant General is hereby ordered to support the Department of Homeland Security with National Guard personnel sufficient to alleviate staffing shortages at adult and juvenile correctional and detention facilities; and

3. The Adjutant General and the Secretary of the Department of Homeland Security are empowered to enter into any agreement, lasting not more than one year, to ensure the proper deployment of National Guard personnel. While the Adjutant General will continue to exercise overall command and control of National Guard personnel, the Secretary of the Department of Homeland Security will provide direction as to the general or specific mission to be accomplished; and

4. Any agreement between the Adjutant General and the Secretary of the Department of Homeland Security may, by agreement, extend the period beyond one year should staffing shortages persist.

   **IN WITNESS WHEREOF,** I have hereunto set my hand and caused the Great Seal of the State of West Virginia to be affixed.



**DONE** at the Capitol, in the City of Charleston, State of West Virginia, this Eleventh Day of August, in the Year of our Lord, Two Thousand Twenty-Two, and in the One Hundred Sixtieth Year of the State.

**GOVERNOR**

**By the Governor**

**SECRETARY OF STATE**

E-FILED 04/19/2023 11:43 AM
CC-02-2022-C-272
Berkeley County Circuit Clerk
Michelle R. Schoppert

| 2021 3:29 pm | Memorial for records regarding infection of the femur and treatment plan. | | | |
|---|---|---|---|---|
| 01-22-2022 10:34 pm | Pt denies SI/HI. Pt denies medical/mental health hx, Pt denies drug/alcohol abuse. No lice/scabies noted. PPD LFA, FS complete, All forms signed. DT not complete Pt peed during clothed body search. Tasked to complete at a later time. Covid test neg | McCrork, Chelsea | Medical Staff | Misc. Note |
| 01-22-2022 10:45 pm | Pt states hx of MRSA in L femur along with rods and pins. Diagnosed 1yr prior | McCrork, Chelsea | Medical Staff | Medical Note |
| 01-24-2022 5:28 am | Attempted urine screen Pt took cup in cell and attempted but stated she couldn't pee at this time | McCrork, Chelsea | Medical Staff | Misc. Note |
| 03-11-2022 12:11 am | Pt denies SI/HI. Pt states she has a rod in her femur and had an infection, Pt on doxycycline starting 09/2021 x6 months according to outside records on file from BMC. Pt states she fills at Walgreens and this is the last month on antibiotics. Pt states she was using "boot" prior to intake and that she has been up for 2 days. Pt states she used about a gram 12hrs ago. Pt having a panic attack on intake which she has hx of anxiety and panic attacks in the past. Pts vitals all stable with an elevated pulse. Pt unable to sit still during assessment, nurse notified and tasked to recheck in 1 hr. Sandwich and water given to help calm patient. PPD not placed due to pts movements tasked for when she is able to hold still. FS completed, Covid screen neg and forms all signed. No lice/scabies noted. Pt presents with discoloration of both wrists stating it is from the cuffs during arrest. | McCrork, Chelsea | Medical Staff | Misc. Note |
| 03-11-2022 12:17 am | PPD placed on 1/22/2022 and read on 1/24/2022 reaction of 0mm | McCrork, Chelsea | Medical Staff | Misc. Note |
| 03-12-2022 4:36 am | Attempted to collect drug test, Pt could not urinate. | Shank, Kelsy | Medical Staff | Misc. Note |
| 03-18-2022 5:32 pm | pt has exhibited unusual behaviors the last 2 days. Yesterday this nurse believed pt was having difficulty with detox process and discussed this with provider who allowed 1x dose of Zofran 4 mg im. Pt was not cooperative, twisting and turning, she stated she wanted it but then stated she was afraid of needles. She laid on bunk and held this nurse's leg and was able to tolerate injection. Pt reported that it did help. Today pt's behavior was not improved. She did not appear dehydrated either day but stated that she had vomited on both days. Today this nurse felt another intervention may be needed until girls in the same section reported that pt had been taking drugs in the section. Security was notified that pt needed to be moved to intake for better observation of her behaviors. | Way, LPN, Christina | Medical Staff | Medical Note |
| 03-19-2022 7:00 am | Housed in intake for observation No complaints thru the night Rested on cot ,cooperative | Engle, Brenda | Medical Staff | Medical Note |
| 03-20-2022 5:04 am | Housed in in take for observation and detoxing Has rested on cot thru the night with no complaints voiced Pending chow this am | Engle, Brenda | Medical Staff | Medical Note |
| 03-21-2022 2:28 am | Housed in the Intake for Observation. Rested on bunk during the night. No s/s of distress/depression. No complaints voiced, no SI/HI voiced or reported. Will continue to monitor. | Marshall, Mortricia | Medical Staff | Misc. Note |
| 03-22-2022 3:31 am | Pt housed in intake for observation. Pt laying on bunk face down with her feet on the wall. There is trash all over the cell floor and what appears to be ripped up styrofoam plates and cups on her bunk and cell floor. Will cont. to monitor. | Scott, Brandy | Medical Staff | Medical Note |
| 03-23-2022 7:33 am | Housed in Intake for observation. Rested on bunk most of the night. Ate breakfast. Trash continues to be all over floor. No s/s of distress/depression. No complaints voiced, no SI/HI voiced or reported. Will continue to monitor. | Marshall, Mortricia | Medical Staff | Misc. Note |
| 03-24-2022 | Housed in Intake for observation. Rested on bunk most of night. No s/s of distress/depression. No complaints voiced, no SI/HI voiced or reported. Will continue to monitor. | Marshall, Mortricia | Medical Staff | Misc. Note |

EXHIBIT 3

tabbies

Bowers-Records-PrimeCare
000239

E-FILED 4/19/2023 11:43 AM
CC-02-2022-C-272
Berkeley County Circuit Clerk
Michelle R. Schoppert

| | | PPD / RPR | | | | am |
|---|---|---|---|---|---|---|
| 3648752e | 1. Vital Signs / PPD / RPR | Rapid HIV test results | N/A | | McCrork, Chelsea | 03-11-2022 12:12 am |
| 3648752e | 1. Vital Signs / PPD / RPR | Was the patient informed of the HIV test results | N/A | | McCrork, Chelsea | 03-11-2022 12:12 am |
| 3648752e | 1. Vital Signs / PPD / RPR | FEMALE ONLY: Pregnancy Test Results | Negative | | Shank, Kelsy | 03-12-2022 8:43 pm |
| 3648752e | 1. Vital Signs / PPD / RPR | Was the patient informed of pregnancy results? | Yes | | Shank, Kelsy | 03-12-2022 8:43 pm |
| 3648752e | 2. Intake Suicide Screening | Problems recorded during prior incarcerations: | Opiate Withdrawal Z13.9 Encounter for screening, unspecified INTEGUMENTARY Heroin Withdrawal Benzo Withdrawal S72.92 Unspecified fracture of left femur T84.7 Infection and inflammatory reaction due to other internal orthopedic prosthetic devices, implants and grafts | | McCrork, Chelsea | 03-11-2022 12:17 am |
| 3648752e | 2. Intake Suicide Screening | Arresting or transporting officer believes that patient may be a suicide risk | No | | McCrork, Chelsea | 03-11-2022 12:17 am |
| 3648752e | 2. Intake Suicide Screening | Patient lacks close family or friends in the community (no family or friends). | No | | McCrork, Chelsea | 03-11-2022 12:17 am |
| 3648752e | 2. Intake Suicide Screening | Patient has experienced a significant loss within the last six months. (e.g. loss of job, loss of relationship. Death of close family member). | No | | McCrork, Chelsea | 03-11-2022 12:17 am |
| 3648752e | 2. Intake Suicide Screening | Patient is very worried about major problems other than legal situation. (e.g. financial or family problems, a medical condition, fear of losing job) | No | | McCrork, Chelsea | 03-11-2022 12:17 am |
| 3648752e | 2. Intake Suicide Screening | Patient's family or significant other (spouse, parent, close friend, lover) has attempted or comitted suicide. | No | | McCrork, Chelsea | 03-11-2022 12:17 am |
| 3648752e | 2. Intake Suicide Screening | Patient has mental health treatment history. (Note current psychotropic medication and name of most recent treatment agency). | No | | McCrork, Chelsea | 03-11-2022 12:17 am |
| 3648752e | 2. Intake Suicide Screening | Patient has history of drug or alcohol abuse. | Yes (1 point) | | McCrork, Chelsea | 03-11-2022 12:17 am |
| 3648752e | 2. Intake Suicide Screening | Patient expresses extreme embarrassment, shame, or felling of humiliation as result of charge or incarceration (consider position in community and/or shocking nature of crime) | No | | McCrork, Chelsea | 03-11-2022 12:17 am |
| 3648752e | 2. Intake Suicide Screening | Patient is thinking about killing him/herself. | No | | McCrork, Chelsea | 03-11-2022 12:17 am |
| 3648752e | 2. Intake Suicide Screening | Patient has attempted suicide previously. (Check wrists and note method.) | Yes (1 point) | | McCrork, Chelsea | 03-11-2022 12:17 am |
| 3648752e | 2. Intake Suicide Screening | Suicide attempt occurred within the last month. | No | | McCrork, Chelsea | 03-11-2022 12:17 am |
| 3648752e | 2. Intake Suicide Screening | Patient feels that there is nothing to look forward to in the future. (feelings of hopelessness or | No | | McCrork, Chelsea | 03-11-2022 |

EXHIBIT
4
tabbies®

E-FILED | 4/19/2023 1:43 AM
CC-02-2022-C-272
Berkeley County Circuit Clerk
Michelle R. Schoppert

| 3648752e | 3b Receiving Screening | Name of Health Insurance Company | na | | McCrork, Chelsea | 12:25 am |
| 3648752e | 3b Receiving Screening | Insurance Policy Number | na | | McCrork, Chelsea | 03-11-2022 12:25 am |
| 3648752e | 3b Receiving Screening | Insurance Group Number | na | | McCrork, Chelsea | 03-11-2022 12:25 am |
| 3648752e | 3b Receiving Screening | Are referrals needed for care? | No | | McCrork, Chelsea | 03-11-2022 12:25 am |
| 3648752e | 3b Receiving Screening | Primary Care Physician | na | | McCrork, Chelsea | 03-11-2022 12:25 am |
| 3648752e | 3b Receiving Screening | Physician Specialty | na | | McCrork, Chelsea | 03-11-2022 12:25 am |
| 3648752e | 3b Receiving Screening | Physician Address | na | | McCrork, Chelsea | 03-11-2022 12:25 am |
| 3648752e | 3b Receiving Screening | Physician Phone Number | na | | McCrork, Chelsea | 03-11-2022 12:25 am |
| 3648752e | 3b Receiving Screening | Last Date Visited Physician | na | | McCrork, Chelsea | 03-11-2022 12:25 am |
| 3648752e | 3b Receiving Screening | Did the patient take drug test ? | Yes | | McCrork, Chelsea | 03-11-2022 12:25 am |
| 3648752e | 3b Receiving Screening | Do you drink Alcohol? | No | | McCrork, Chelsea | 03-11-2022 12:25 am |
| 3648752e | 3b Receiving Screening | When was the last time you drank Alcohol? | Never | | McCrork, Chelsea | 03-11-2022 12:25 am |
| 3648752e | 3b Receiving Screening | What kind of alcohol? | na | | McCrork, Chelsea | 03-11-2022 12:25 am |
| 3648752e | 3b Receiving Screening | How much do you drink? | na | | McCrork, Chelsea | 03-11-2022 12:25 am |
| 3648752e | 3b Receiving Screening | Do you use Heroin / Methadone? | No | | McCrork, Chelsea | 03-11-2022 12:25 am |
| 3648752e | 3b Receiving Screening | When was the last time you used Heroin / Methadone? | Never | | McCrork, Chelsea | 03-11-2022 12:25 am |
| 3648752e | 3b Receiving Screening | Quantity used? | na | | McCrork, Chelsea | 03-11-2022 12:25 am |
| 3648752e | 3b Receiving | Do you use Benzo (depressants)? - Klonopin, | No | | McCrork, | 03-11- |

EXHIBIT
5

Bowers-Records-PrimeCare
000127

CorEMR - Bowers, Jessica Bleu - #3648752e (06...

E-FILED | 4/19/2023 11:43 AM
CC-02-2022-C-272
Berkeley County Circuit Clerk
Michelle R. Schoppert

| | | | | | |
|---|---|---|---|---|---|
| | Screening | Ativan, Xanax, etc. | | | am |
| 3648752e | 3b Receiving Screening | When was the last time you used Benzo? - Klonopin, Ativan, Xanax, etc. | Never | McCrork, Chelsea | 03-11-2022 12:25 am |
| 3648752e | 3b Receiving Screening | Do you use any Opiates / Narcotics? - Morphine, Percocet, Vicodine, Oxy Contin, Kratom, etc. | No | McCrork, Chelsea | 03-11-2022 12:25 am |
| 3648752e | 3b Receiving Screening | When was the last time you used Opiates / Narcotics? - Morphine, Percocet, Vicodine, Oxy Contin, Kratom, etc. | Never | McCrork, Chelsea | 03-11-2022 12:25 am |
| 3648752e | 3b Receiving Screening | Do you use or consume any other legal or illegal substances not prescribed by a licensed provider? Detail in comments. | N/A | McCrork, Chelsea | 03-11-2022 12:25 am |
| 3648752e | 3b Receiving Screening | In the past 6 months, have you used prescribed medications more often than prescribed or that were not prescribed for you? | No | McCrork, Chelsea | 03-11-2022 12:25 am |
| 3648752e | 3b Receiving Screening | Is the patients mobility restricted in any way or does the inmate have any obvious deformities or handicaps? If yes, specify. | No | McCrork, Chelsea | 03-11-2022 12:25 am |
| 3648752e | 3b Receiving Screening | Do you have difficulty dressing or bathing? | No | McCrork, Chelsea | 03-11-2022 12:25 am |
| 3648752e | 3b Receiving Screening | Are you currently taking any medications? | Medical | McCrork, Chelsea | 03-11-2022 12:25 am |
| 3648752e | 3b Receiving Screening | Current Medications: Please list Medication, Dose, Frequency, Last Taken | Doxycycline | McCrork, Chelsea | 03-11-2022 12:25 am |
| 3648752e | 3b Receiving Screening | Is medication on person? | No | McCrork, Chelsea | 03-11-2022 12:25 am |
| 3648752e | 3b Receiving Screening | Was the patient prescribed medication at this facility during their last incarceration? (Review medication section of the record) | No | McCrork, Chelsea | 03-11-2022 12:25 am |
| 3648752e | 3b Receiving Screening | Are you enrolled in MAT program? If yes, specify name and address of the provider | No | McCrork, Chelsea | 03-11-2022 12:25 am |
| 3648752e | 3b Receiving Screening | Have you ever been hospitalized for substance abuse? (If Yes, list the name of hospital and date) | No | McCrork, Chelsea | 03-11-2022 12:25 am |
| 3648752e | 3b Receiving Screening | Are you interested in Sublocade for OUD? | N/A | McCrork, Chelsea | 03-11-2022 12:25 am |
| 3648752e | 3b Receiving Screening | Doctor Name and Number | BMC | McCrork, Chelsea | 03-11-2022 12:25 am |
| 3648752e | 3b Receiving Screening | Pharmacy Name and Number (If Known) | Walgreens | McCrork, Chelsea | 03-11-2022 12:25 am |
| 3648752e | 3b Receiving Screening | Are you on a special diet prescribed by a physician? | No | McCrork, Chelsea | 03-11-2022 |

EXHIBIT
tabbies®  6

Bowers-Records—PrimeCare
000128                127/255

E-FILED | 4/19/2023 11:43 AM
CC-02-2022-C-272
Berkeley County Circuit Clerk
Michelle R. Schoppert

5/23/22, 10:53 AM                     CorEMR - Bowers, Jessica Bleu - #3648752e (06-

| 3648752e | 3a Urine Drug Screen | Methylenedioxymethamphetamine (MDMA) | Negative | | 8:42 pm |
| 3648752e | 3a Urine Drug Screen | Methadone (MTD) | Negative | Shank, Kelsy | 03-12-2022 8:42 pm |
| 3648752e | 3a Urine Drug Screen | Opiate (OPI300) | NoNegative | Shank, Kelsy | 03-12-2022 8:42 pm |
| 3648752e | 3a Urine Drug Screen | Oxycodone (OXY) | Negative | Shank, Kelsy | 03-12-2022 8:42 pm |
| 3648752e | 3a Urine Drug Screen | Tetrahydrocannabinol (THC) Marijuana | Negative | Shank, Kelsy | 03-12-2022 8:42 pm |
| 3648752e | 3a Urine Drug Screen | K2 = Synthetic Cannabinoids | Negative | Shank, Kelsy | 03-12-2022 8:42 pm |
| 3648752e | 3a Urine Drug Screen | Fentanyl | Positive | Shank, Kelsy | 03-12-2022 8:42 pm |
| 3648752e | 3a Urine Drug Screen | Tramadol (TRA) | Negative | Shank, Kelsy | 03-12-2022 8:42 pm |
| 3648752e | 3a Urine Drug Screen | Alcohol | Negative | Shank, Kelsy | 03-12-2022 8:42 pm |
| 3648752e | 3a Urine Drug Screen | Other Drug (Describe in note section:) | Negative | Shank, Kelsy | 03-12-2022 8:42 pm |
| 3648752e | 3a Urine Drug Screen | Specimen Collected By: | K. Shank, RMA:::03/12/2022 | Shank, Kelsy | 03-12-2022 8:42 pm |
| 3648752e | 3a Urine Drug Screen | Specimen Read by: | K. Shank, RMA:::03/12/2022 | Shank, Kelsy | 03-12-2022 8:42 pm |
| 3648752e | Telephone / Verbal Order Form (Medical) | Staff member calling Provider, Date and Time | Christina Way lpn:::03/13/2022 1152 | Way, LPN, Christina | 03-13-2022 11:52 am |
| 3648752e | Telephone / Verbal Order Form (Medical) | Reason provider called: | Positive for FTY | Way, LPN, Christina | 03-13-2022 11:52 am |
| 3648752e | Telephone / Verbal Order Form (Medical) | Orders Received | t3 taper | Way, LPN, Christina | 03-13-2022 11:52 am |
| 3648752e | Telephone / Verbal Order Form (Medical) | Length of order | per protocol | Way, LPN, Christina | 03-13-2022 11:52 am |
| 3648752e | Telephone / Verbal Order Form (Medical) | Provider giving the orders: | Thaker | Way, LPN, Christina | 03-13-2022 11:52 am |
| 3648752e | Telephone / Verbal Order Form (Medical) | Follow up | prn | Way, LPN, Christina | 03-13-2022 11:52 am |
| 3648752e | Telephone / Verbal Order Form (Medical) | Orders noted: | Yes | Way, LPN, Christina | 03-13-2022 11:52 am |
| 3648752e | Telephone / Verbal Order Form (Medical) | Signature / Date Time when orders are noted. | Christina Way lpn:::03/13/2022 1152 | Way, LPN, Christina | 03-13-2022 11:52 am |
| 3648752e | Telephone / Verbal Order Form (Medical) | Signature, Date, and Time: | Christina Way lpn:::03/13/2022 1152 | Way, LPN, Christina | 03-13-2022 11:52 am |
| 3648752e | COWS / CIWA (Ar) / CIWA (B) | Detoxification checks are for the following (Check all that apply) | Opiates (Complete COWS) | Bickford, Kelly | 03-15-2022 7:35 pm |

EXHIBIT
7
tabbies

E-FILED | 4/19/2023 11:23 AM
CC-02-2022-C-272
Berkeley County Circuit Clerk
Michelle R. Schoppert

# Lloyd R. Saberski, M.D.

**Clinical office:** Cornell Scott Hill Health Center
Yale New Haven Health

**Administrative Assistant:** Ms. Debbie Cochran
203-464-8172; dcochran@lloydsaberskimd.com
PO Box 1203 Cheshire Connecticut 06410

Section of General Medicine
Department of Internal Medicine
The Yale School of Medicine

Attorney Chris Heavens
Heavens Law Firm, PLLC
2438 Kanawha Boulevard, East
Charleston, WV 25311

February 16, 2023

Telephone: 304-346-0464
Email: chris@heavenslawfirm.com

**RE:**   Jessica Bowers
**DOB:**  06/21/1991

Dear Attorney Heavens:

I, Lloyd Saberski, M.D., Board certified in internal medicine, anesthesiology, and pain management with an unrestricted license to practice medicine in the state of Connecticut, reviewed medical records and other documents and formed opinions on Ms. Jessica Bowers.

The following documents were reviewed: Emergency Medical Services log and records from March 29, 2022; Prime Care medical records; Eastern Regional Jail logs; medical records from Berkeley Medical Center; Jessica Bowers' surrogate selection; telephone interview with Ms. Jessica Bowers' mother; a defense memo; PrimeCare Medical policy: Medically supervised withdrawal treatment, revised 11/01/2018; West Virginia Regional Jail and Correctional Facility Authority, Policy and Procedures, Chapter, Medical and Healthcare services: Special Medical Programs and the Receiving Screening Form; and the National Commission on Correctional Health Care: Medically Supervised Withdrawal and Treatment; Eastern Panhandle Mental Health.

**Briefly:** Ms. Bowers has had a long history of substance use disorder and consequently has had numerous incarcerations related directly or indirectly to substance.

Upon her admissions to the Eastern Regional Jail, because of concerns of imminent withdrawal, as per the National Commission on Correctional Health Care and the State of West Virginia, Ms. Bowers was referred to the care of PrimeCare Medical Inc., the vendor of medical and psychiatric services at the Eastern Regional Jail for screening regarding substance use.

From the medical records made available, PrimeCare Medical supplied medical services on five separate occasions prior to the March 10, 2022, admission. All these admissions pertained to imminent concerns of withdrawal and addiction. Upon admission, each time, Ms. Bowers was found to have multiple substances in her system which varied from admission-to-admission and included fentanyl, buprenorphine, marijuana, benzodiazepines, alcohol and MDMA.

Her last admission prior to the subject March 10, 2022, confinement was January 22, 2022, with a discharge from their care on February 2, 2022.

02-16-23 Ms. Jessica Bowers – Dr. Lloyd Saberski narrative

EXHIBIT

FEB 2 7 2023

1

Ms. Bowers was incarcerated in Eastern Regional Jail on March 10, 2022. PrimeCare employee Ms. Chelsea McCrork made the following entry found on page 239 of the PrimeCare PDF (PCPDF) in the early hours of March 11, 2022:

| 03-11-2022 12:11 am | Pt denies SI/HI. Pt states she has a rod in her femur and had an infection, Pt on doxycycline starting 09/2021 x6 months according to outside records on file from BMC. Pt states she fills at Walgreens and this is the last month on antibiotics. Pt states she was using "boot" prior to intake and that she has been up for 2 days. Pt states she used about a gram 12hrs ago. Pt having a panic attack on intake which she has hx of anxiety and panic attacks in the past. Pts vitals all stable with an elevated pulse. Pt unable to sit still during assessment, nurse notified and tasked to recheck in 1 hr. Sandwhich and water given to help calm patient. PPD not placed due to pts movements tasked for when she is able to hold still. FS completed, Covid screen neg and forms all signed. No lice/scabies noted. Pt presents with discoloration of both wrists stating it is from the cuffs during arrest. |
|---|---|

The screening intake above indicates the last heroin used was 12 hours ago; presumably by injection. Despite the heroin, Ms. Bowers was found to be oriented to person, place, and time (Page 123 PCPDF.)

Nurse McCrork further noted on Page 125 PCPDF:

| Problems recorded during prior incarcerations: | Opiate Withdrawal Z13.9 Encounter for screening, unspecified INTEGUMENTARY Heroin Withdrawal Benzo Withdrawal S72.92 Unspecified fracture of left femur T84.7 Infection and inflammatory reaction due to other internal orthopedic prosthetic devices, implants and grafts |
|---|---|

The PrimeCare Medical staff was fully aware at the time of Ms. Bowers' admission to the WV Eastern Regional Jail March 10, 2022, that she had been using heroin and other substances for years, indicative of recalcitrant substance use.

| When was the last time you used Heroin / Methadone? | Never |
|---|---|

The above entry (Page 127 PCPDF – PrimeCare PDF) is known to be incorrect for heroin. None of the available records showed she had been prescribed methadone.

On Page 128 of the PCPDF, Ms. Bowers indicated she is not on a MAT (medication assisted treatment) with an agent such as methadone or buprenorphine.

On Page 135 of the PCPDF: Ms. Bowers had a urine drug screen (UDS) on March 12, 2022, the time of specimen collection was not recorded; the results were placed the same day into the record at 8:42 PM and were **positive for Fentanyl**.

| 3648752e | 3a Urine Drug Screen | Fentanyl | Positive | Shank, Kelsy | 03-12-2022 8:42 pm |
|---|---|---|---|---|---|

On Page 135 of the PCPDF, LPN Christina Way recorded a telephone, verbal order from medical (Thaker) on March 13, 2022, at 11:52 AM to begin a t3 taper, a Tylenol with codeine taper as per protocol:

| Telephone / Verbal Order Form (Medical) | Orders Received | t3 taper | Way, LPN, Christina | 03-13-2022 11:52 am |
|---|---|---|---|---|
| Telephone / Verbal Order Form (Medical) | Length of order | per protocol | Way, LPN, Christina | 03-13-2022 11:52 am |

Page 173 of the PCPDF: The Tylenol with codeine began on March 13, 2022, at 1:05 PM with 60 mg three times per day. Tapering started on March 15, 2022, and was completed March 20, 2022, with the last Tylenol with codeine at sleep time, 8:16 PM.

| 03-13-2022 1:05 pm | Received | [blank] | Haley, Courtney | Acetaminophen/Codeine #3 (Tylenol #3) 300/30mg 2 Tab By Mouth TID |
|---|---|---|---|---|
| 03-13-2022 10:06 pm | Received | [blank] | Scanlan, Jacqueline | Acetaminophen/Codeine #3 (Tylenol #3) 300/30mg 2 Tab By Mouth TID |
| 03-14-2022 7:10 am | Received | [blank] | Engle, Brenda | Acetaminophen/Codeine #3 (Tylenol #3) 300/30mg 2 Tab By Mouth TID |
| 03-14-2022 1:24 pm | Received | [blank] | Scott, Brandy | Acetaminophen/Codeine #3 (Tylenol #3) 300/30mg 2 Tab By Mouth TID |
| 03-14-2022 10:21 pm | Received | [blank] | Miller, LPN, megan | Acetaminophen/Codeine #3 (Tylenol #3) 300/30mg 2 Tab By Mouth TID |
| 03-15-2022 8:35 am | Received | [blank] | Way, LPN, Christina | Acetaminophen/Codeine #3 (Tylenol #3) 300/30mg 2 Tab By Mouth BID |
| 03-15-2022 9:49 pm | Received | [blank] | Bickford, Kelly | Acetaminophen/Codeine #3 (Tylenol #3) 300/30mg 2 Tab By Mouth BID |
| 03-16-2022 10:16 am | Received | [blank] | Levy, Kimberly | Acetaminophen/Codeine #3 (Tylenol #3) 300/30mg 2 Tab By Mouth BID |
| 03-16-2022 10:07 pm | Received | [blank] | Moon, LPN, Tara | Acetaminophen/Codeine #3 (Tylenol #3) 300/30mg 2 Tab By Mouth BID |
| 03-17-2022 11:42 am | Received | [blank] | Way, LPN, Christina | Acetaminophen/Codeine #3 (Tylenol #3) 300/30mg 1 Tab By Mouth BID |
| 03-17-2022 6:40 pm | Received | [blank] | Moon, LPN, Tara | Acetaminophen/Codeine #3 (Tylenol #3) 300/30mg 1 Tab By Mouth BID |
| 03-18-2022 9:15 pm | Received | [blank] | Scanlan, Jacqueline | Acetaminophen/Codeine #3 (Tylenol #3) 300/30mg 1 Tab By Mouth BID |
| 03-19-2022 10:03 pm | Received | [blank] | Moon, LPN, Tara | Acetaminophen/Codeine #3 (Tylenol #3) 300/30mg 1 Tab By Mouth QHS |
| 03-20-2022 8:16 pm | Received | [blank] | Miller, LPN, megan | Acetaminophen/Codeine #3 (Tylenol #3) 300/30mg 1 Tab By Mouth QHS |

A scheduled follow-up with a provider was not planned despite implementation of an opioid detoxification protocol; follow-ups were left to being PRN (as needed.)

| Telephone / Verbal Order Form (Medical) | Follow up | prn | Way, LPN, Christina | 03-13-2022 11:52 am |
|---|---|---|---|---|

The next set of notes appear on March 15, 2022, starting at 7:35 PM. There is no indication why there had been no interval notes and why they seemed to delay starting assessments for opioid withdrawal 2.5 days after they had orders since assessing for withdrawal a critical element in their written detoxification protocol:

| 3648752e | COWS / CIWA (Ar) / CIWA (B) | COWS Score: In addition enter the COWS score in the comment of the vital sign section | 5 | | Bickford, Kelly | 03-15-2022 7:35 pm |
| 3648752e | COWS / CIWA (Ar) / CIWA (B) | COWS Withdrawal Scale | 5-12 Mild | | Bickford, Kelly | 03-15-2022 7:35 pm |

On Page 136 of the PCPDF, Ms. Bickford concluded Ms. Bowers was going through mild opiate withdrawal. Please see the appendix of this report for the COWS questionnaire and how it is graded for withdrawal.

On Page 137 of the PCPDF, LPN Tara Moon on March 16, 2022, at 10:45 PM noted the COWS scale now a one and thus no clinical evidence of an opiate withdrawal:

| 3648752e | COWS / CIWA (Ar) / CIWA (B) | COWS Score: In addition enter the COWS score in the comment of the vital sign section | 1 | | Moon, LPN, Tara | 03-16-2022 10:45 pm |

On Page 183 of the PCPDF on March 17, 2022, there is an indication she had an active infection in her right arm and a request made for a medical evaluation. A medical provider wanted to see her that day; no COWS entries made for March 17, 2022:

| Appointment Scheduled Date | 03-17-2020 |
| Appointment Created Date | 03-17-2020 2:43 am |
| Appointment Description | Boil under right arm; requesting to be seen by provider- per provider, she wants to see this Pt today. |
| Appointment Category | NP/PA |
| Priority (1=High, 5=Low) | 1 |

From Page 183 of the PCPDF: Nurse practitioner Jones evaluated Ms. Bowers on March 17, 2022, at an unknown time. There are no medical notes available for this encounter, so it is unclear where the boil was located, its cause and how it was treated.

The next note chronologically is on Page 239 of the PCPDF written by LPN Christina Way on March 18, 2022, at 5:32 PM:

| 03-18-2022 5:32 pm | pt has exhibited unusual behaviors the last 2 days. Yesterday this nurse believed pt was having difficulty with detox process and discussed this with provider who allowed 1x dose of Zofran 4 mg im. Pt was not cooperative, twisting and turning, she stated she wanted it but then stated she was afraid of needles. She laid on bunk and held this nurse's leg and was able to tolerate injection. Pt reported that it did help. Today pt's behavior was not improved. She did not appear dehydrated either day but stated that she had vomited on both days. Today this nurse felt another intervention may be needed until girls in the same section reported that pt had been taking drugs in the section. Security was notified that pt needed to be moved to intake for better observation of her behaviors. |

LPN Christina Way reported difficulty with the detoxification process and was concerned that illicit drugs taken by Ms. Bowers. She decided it was critical for medical reasons to have Ms. Bowers transferred to a unit where there was better observation.

However, a physician or advanced practice clinician did not evaluate Ms. Bowers notwithstanding these documented concerns and the known active infection in her right arm and the historical left hip abscess.

Seemingly no determination made by Ms. Way or other PrimeCare staff on March 18, 2022, if Ms. Bowers was having severe withdrawal requiring transfer to a hospital for aggressive lifesaving treatment. No COWS scores were documented in the record.

On Page 239 of the PCPDF, over the next three days March 19, March 20, and Match 21, 2022, Ms. Bowers appeared to be stable. Corresponding medical records as to her medical status have not been provided.

| 03-19-2022 7:00 am | Housed in intake for observation No complaints thru the night Rested on cot ,cooperative | Engle, Brenda | Medical Staff | Medical Note |
|---|---|---|---|---|
| 03-20-2022 5:04 am | Housed in in take for observation and detoxing Has rested on cot thru the night with no complaints voiced Pending chow this am | Engle, Brenda | Medical Staff | Medical Note |
| 03-21-2022 2:28 am | Housed in the Intake for Observation. Rested on bunk during the night. No s/s of distress/depression. No complaints voiced, no SI/HI voiced or reported. Will continue to monitor. | Marshall, Mortricia | Medical Staff | Misc. Note |

From Page 239 of the PCPDF: On March 22, 2022, at 3:31 AM, Brandy Scott made observations without conclusions:

| 03-22-2022 3:31 am | Pt housed in intake for observation. Pt laying on bunk face down with her feet on the wall. There is trash all over the cell floor and what appears to be ripped up styrofoam plates and cups on her bunk and cell floor. Will cont. to monitor. |
|---|---|

From Page 239 of the PCPDF: Similarly, Mortricia Marshall made observations and recorded them on March 23, 2022, and March 24, 2022:

| 03-23-2022 7:33 am | Housed in Intake for observation. Rested on bunk most of the night. Ate breakfast. Trash continues to be all over floor. No s/s of distress/depression. No complaints voiced, no SI/HI voiced or reported. Will continue to monitor. | Marshall, Mortricia | Medical Staff | Misc. Note |
|---|---|---|---|---|
| 03-24-2022 | Housed in Intake for observation. Rested on bunk most of night. No s/s of distress/depression. No complaints voiced, no SI/HI voiced or reported. Will continue to monitor. | Marshall, Mortricia | Medical Staff | Misc. Note |

On Page 255 of the PCPDF, mental health provider Christin Bell identified that Ms. Bowers had no orientation and psychomotor agitation:

| Call Date | 03-24-2022 12:37 pm |
|---|---|
| Clinician Name | Christin Bell |
| Requested by Patient? | Yes |
| Subjective | 03-24-2022 12:37 pm - Bell, Christin : MH attempted to interview Pt in intake around 1058, at request of custody. Pt provides intermittent engagement in interview. When asked if she had Hx of MH Tx Pt replies, "I really have." Pt stares blankly at this MH provider when assessing for suicidality. MH provider offered to return at late time to interview Pt replies, "you promise." |
| Objective | 03-24-2022 12:37 pm - Bell, Christin : Pt is alert and appears to have no orientation. Pt presents with psychomotor agitation. |
| Assessment | 03-24-2022 12:37 pm - Bell, Christin : defer at this time |
| Plan | 03-24-2022 12:37 pm - Bell, Christin : MH will attempt to reinterview Pt at another time |

However, despite no orientation and psychomotor agitation, there are no notes found after Ms. Bell's assessment on March 24, 2022, and there are no entries in the PrimeCare PDF for March 25, 2022.

From Page 240 of the PCPDF: The next notation in the record is by Brenda Engle and is from March 26, 2022, at 6:53 AM:

| 03-26-2022 6:53 am | Housed in intake for observation Quiet on her cot all night Offered no complaints this am Pending chow |
|---|---|

From Page 240 of the PCPDF: Although the next entry by Kelsy Shank is time stamped for March 27, 2022, the note indicates it was a late entry for the previous day, March 26, 2022:

| 03-27-2022 6:26 am | Late entry for 3/26/22 @ 2100- Pt has been laying on floor face down without any pants on. Encouraged multiple times to get up and get dressed. Cell with empty trays throughout. This writer and Lt Jordan into cell to clean up trash and food scattered throughout. Assist pt up. Pt assisted up by this writer and Lt Jordan to bunk. Pt reports bad leg pain to bil legs. One time dose of Tylenol given and Gatorade provided. VS WNL. Pt assisted to laying position and covered up with blankets, pt visible goosebumps to bil arms reports cold. Educated not to lay on the ground voiced understood. Laid down and rested w/ eyes closed. |
|---|---|

Despite the unusual behaviors, the known boil (abscess), and the history of MRSA infections, an advanced practice medical professional (APRN or MD) was neither alerted nor summoned by Kelsy Shank or other PrimeCare employee.

Authored by Brenda Engle is the next chronological entry on March 27, 2022, at 6:44 AM on Page 240 of the PCPDF:

| 03-27-2022 6:44 am | Housed in intake for observation with detoxing This am after medication for pain states she feels better but she is standing at the door picking her milk carton apart and does other bizarre behavior like that. She ate her morning chow. Has moderate tremors of upper extremities She can converse but she struggles to create a lucid conversation Will continue to monitor |
|---|---|

Although clearly still following a detoxification protocol there are no COWS entries. Ms. Bowers is also noted to have tremors and an **abrupt change in mental status**. Despite the change in mental status an advanced practice medical professional (APRN or MD) was not summoned. Having an

abrupt change in mental status is a medical urgency and with medical certainty requires an evaluation by a licensed provider promptly.

At this juncture, a change in mental status could be from a wide variety of medical, metabolic, and neurological conditions, many of which can be life threatening. However, special consideration given the clinical circumstances necessary regarding opioids, opioid withdrawal, other drugs, and sepsis.

From Page 240 of the PCPDF: The next chronological entry is about 24 hours later. Lisa Beard recorded further bizarre behaviors:

| 03-28-2022 7:10 am | Housed in intake for observation. Pt has been up most of the night sitting or laying on bunk, randomly screaming out. Pt chews on Styrofoam trays and milk cartons. Encouraged not to do this by staff. Pt cont to scream out during breakfast. Eats with her hands. No complaints voiced. Multiple attempts to get pt up from bunk to lay on her mat w/ no success. Will cont to monitor. |
|---|---|

Despite the documented unusual behaviors an advanced practice medical professional (APRN or MD) was not summoned to see Ms. Bowers urgently, but an appointment was scheduled for the next day despite PrimeCare employee Ashley Fisher recognizing the clinical situation as a high priority.

On Page 229 of the PCPDF an entry was made at 11:30 AM March 28, 2022, for a doctor's appointment the next day, on March 29, 2022, for "abnormal behaviors" and a possible drug induced psychosis:

| Appointment Scheduled Date | 03-29-2022 |
|---|---|
| Appointment Created Date | 03-28-2022 11:30 am |
| Appointment Description | Please see patient for possible drug induced psychosis. |
| Appointment Category | Doctor |
| Priority (1=High, 5=Low) | 1 |

Despite the unusual behaviors and change in mental status another ~18 hours pass until the next entry into the record. There is no indication that any advanced medical services provided to help determine why Ms. Bowers was having her abrupt change in mental status at that time.

Authored by Morticia Marshall, the next chronological entry was on March 29, 2022, at 5:08 AM on Page 240 of the PCPDF:

| 03-29-2022 5:08 am | Call from Intake to access Pt. Spo2 94% HR apical 86 Radial 76 BP 148/88 RR 20 Prior to going to Intake Officer stated that her chin was placed on the bunk and her body was on the floor and face purple. Pt not responding to verbal commands. Ammonia caps place in nose and it did not bother her. Call placed to the on call MD DR. Baldera and he said send to the ER for evaluation. |
|---|---|

Given the purple face, with a reasonable degree of medical certainty Ms. Bowers had been hypoxic and hypo-ventilating before discovery by staff. Although calling 911 for emergency transport correct, if oxygen available, Dr. Baldera should have ordered it along with continuous pulse oximetry.

Emergency services notified of the 911 call on March 29, 2022, at 5:23 AM. EMS arrived at the WV Eastern Regional Jail at 5:40 AM and were with Ms. Bowers by 5:42 AM.

At the WV Eastern Regional Jail, EMS staff interviewed the jail and PrimeCare staffs and began providing services as detailed in the EMS narrative. In addition to recording information told to them by the staff, they made their own observations (See A in EMS narrative) of Ms. Bowers' face initially being purple with circumoral cyanosis, supporting that Ms. Bowers had a hypoxic event for an unknown amount of time and still was hypoxic when they arrived.

Narrative: Dispatched, responded ALS for a sick person. CHART:

(C) ALOC, Possible Anoxic Injury

(H) Arrived on scene to find the patient seated in cell of ERJ, awake but not responsive to voice. Staff advise that the patient was found face down with her neck underneath the bench in a contorted position, states that her face was purple and she was gasping for breath. Staff advise the patient was moved to a supine position and her neck was placed back into anatomical position, states the patient woke up and sat up but has not been acting appropriately since that time. Staff advise the patient is 10 days into her stay @ the ERJ, states that she has had little to eat or drink and was complaining of abdominal pain yesterday. Info packet from jail advises the patient has a history of benzo and opiate withdrawal.

(A) Obtunded female seated supine in cell w/ a blank stare. Face was initially purple w/ circumoral cyanosis. Neck tenderness is noted w/ palpation. Skin pale, dry. Mucous membranes appear dry, cracked. Pupils E&R @ 3mm. Normal work of breathing, lungs were diminished. No JVD, no edema.

(R) Manual cervical spine immobilization was performed prior to the application of a collar, PMSx4 intact before & after. Cardiac monitor was applied which shows Sinus Tachycardia. 12 lead was obtained showing the same w/o ST segment changes. IV access was difficulty given the ERJ's handcuffs and shackles which they state cannot be moved or touched, #20g IV was started in the LH.

(T) Patient was monitored enroute to the hospital, no change in mental status was noted. 250mL of NS was administered throughout care. Report to RN @ bedside. Patient is unable to sign, transfer of care. Crew clear.

| 03-29-2022 6:14 am | Pt transported via EMS. Report given to Rebecca, RN at BMC-ER. |
|---|---|

The EMS run sheet shows they left the WV Eastern Regional Jail at 6:00 AM (although the PrimeCare entry from Page 240 of the PCPDF says 6:14 AM) and arrived at the hospital at 6:07 AM.

Ms. Bowers was transferred to Berkely Medical Center (BMC); 2543 pages of medical records cover her admission from March 29, 2022, until discharge to home with a family member May 15, 2022.

On page 30 of the BMC records an admitting history written by Dr. David Deuell summarizes Ms. Bowers' condition on arrival:

**Chief Complaint:** Altered Mental Status

**HISTORY OF PRESENT ILLNESS**

Jessica Bleu Bowers, date of birth 6/21/1991, is a 30 y.o.female who presents to the Emergency Department with altered mental status. Patient arrives in the department via EMS from ERJ. EMS states patient was found purple and unresponsive at ERJ on a bench. Upon arrival at ERJ, EMS placed patient on non-rebreathe mask. Patient's heart rate was in the 150's and decreased to 103's after oxygen. Patient does not answer questions or follow commands. EMS states patient was on opioids/benzos prior to incarceration. Patient is slightly more alert upon arrival here.

During the hospital stay it was determined that Ms. Bowers had severe MRSA sepsis from skin lesions, a pulmonary embolus, hepatitis C, abnormal liver functions and a brain injury pattern described as leukoencephalopathy. She was intubated, placed on a ventilator, and admitted to the hospital ICU. On page 5 of the BMC record, documentation shows in addition to the life-threatening medical conditions noted, while she was a ward of the WV Eastern Regional Jail, she was poisoned from Fentanyl:

Poisoning by fentanyl or fentanyl analogs, accidental (unintentional)
initial encounter (CMS HCC)

On page 27 of the BMC record there is a summary of Ms. Bowers' hospital course:

**REASON FOR HOSPITALIZATION AND HOSPITAL COURSE:** This is a 30 y.o., female admitted with MRSA bacteremia due to IV drug abuse and the possible infective endocarditis,R sided PE, blood cultures were positive for MRSA.. History of drug abuse , no use of cocaine , benzodiazepines , and opioids in the past who presents with altered mental status from ERJ.

Dr. Connie Smith consulted. Echo showed EF of 60-65% with no valvular abnormality, brain MRI was negative for any septic emboli. Multiple excoriation marks are noted on skin which can be the source of MRSA infection. Completed IV antibiotics course of 2 weeks, last day was April 13th. Repeat blood culture showed no growth to date.

**Altered mental status due to fentanyl abuse, social withdrawal leukoencephalopathy.** Her urine drug screen was positive for fentanyl. Patient lacks capacity. Healthcare surrogate is her mother. Her mother will be her primary care giver.

Abnormal LFTs, IV drug abuse increases risk for hepatitis, LFTs are improving. She is hepatitis-C positive with high viral loads. Need to follow up with ID.

Ms. Bowers was left with marked cognitive and physical incapacity and no longer can care for herself. She has been followed as an outpatient at BMC and by Eastern Panhandle Mental Health Services.

From page 18 of 35 pages from the Panhandle Mental Health Services record from the June 21, 2022, Tele-health visit:

The patient was recently admitted to The Berkeley Medical Center due to an overdose. She was in jail and she used illicit substances and was taken to the nearest hospital due to altered mental status. Since the overdose the patient has had probelms with her memory and her appetite has increased significantly where she had gained a lot of weight.
The patient is diagnosed with Adhd.

The patient is diagnosed with a Substance use disorder (opioids, cannabis).

Ms. Bowers was seen in follow up by WVU Neurology, APRN Theresa Triggs on August 5, 2022 (BMC records page 59):

**Information obtained from**: patient and mother
**Chief Complaint:** New Patient (Memory issues )

**HPI:** Jessica Bleu Bowers  is a 31 y.o., White female who presents with h/o overdose of opiate and intubation in ICU and continued memory issues since that time
She had hip surgery in 2020, is filing for disability, broke femur, hip surgery, is not on any pain medication at this time; she is on topiramate for anxiety, can't sleep well; she is only taking this at night

APRN neurologist Triggs concluded:

| | | |
|---|---|---|
| 1. | **Opiate dependence, continuous (CMS HCC)** | **F11.20** |
| 2. | Memory deficit | R41.3 |
| 3. | Generalized anxiety disorder | F41.1 |
| 4. | Toxic metabolic encephalopathy | G92.8 |

-h/o overdose injury to the brain
-repeat MRI Brain
-REALLY work the brain
-find a daily goal

**Discussion:** Ms. Bowers was having bizarre and unusual behaviors starting on March 18, 2022. The etiology of the bizarre behaviors was unknown, but there was a concern she may have taken illicit drugs while incarcerated despite supervision.

Ms. Bowers was transferred to a unit where better observation could ensue. However, despite better observation, Ms. Bowers was found hypoxic, cyanotic, and not responsive on March 29, 2022. No one knows how long she was lying there on the floor unresponsive, hypoxic, and cyanotic despite the escalation to a higher level of observation.

The PrimeCare staff documented serially, changes in mental status and bizarre behavior but did not initiate medical investigations to determine why Ms. Bowers was behaving strangely. By March 20, 2022, they had completed the codeine taper, so the bizarre behavior could not be attributed to pre-incarceration heroin.

On March 26, 2022, despite the unusual behaviors, the known boil (skin infection), the goosebumps and feeling cold, an advanced practice medical professional (APRN or MD) was not summoned by Kelsy Shank or other PrimeCare employee.

On March 27, 2022, Ms. Bowers was noted to have tremors and an abrupt change in mental status. Despite the change in mental status an advanced practice medical professional (APRN or MD) was not summoned. Having an abrupt change in mental status was a medical urgency and required an evaluation by a licensed provider promptly.

Ms. Bowers' bizarre behaviors continued March 28, 2022. Despite the documented unusual behaviors an advanced practice medical professional (APRN or MD) was not summoned. Notwithstanding the unusual behaviors and change in mental status, about another 24 hours pass until the next entry into the record.

The next entry on March 29, 2022, Ms. Bowers was found on the floor with her chin on the bunk. It's not clear how long she had been there, but it had been long enough for her to have become cyanotic. So, despite the alleged increased observation, the staff missed Ms. Bowers' physical and respiratory collapse; did not notice she was lying on the floor.

Given the purple face, with a reasonable degree of medical certainty Ms. Bowers had been hypoxic and hypo-ventilating before discovery by the staff. Although calling 911 for emergency care and transport to a hospital correct, at a minimum Dr. Baldera should have ordered oxygen along with continuous pulse oximetry to be start immediately upon discovery of Ms. Bowers' hypoxia. However, the PrimeCare staff not starting oxygen immediately upon discovery that Ms. Bowers needed oxygen, was a deviation from acceptable medical practice, since not providing oxygen delayed receipt of oxygen at least another nineteen minutes; nineteen more minutes with a brain not getting adequate oxygen.

**Conclusions:**  With a reasonable degree of medical certainty, it was a deviation from acceptable medical practice for the PrimeCare team to not aggressively assess Ms. Bowers' abrupt change in mental status on March 27, 2022.

With a reasonable degree of medical certainty, PrimeCare's delay in getting Ms. Bowers evaluated for her change in mental status delayed diagnosis of septicemia, pulmonary embolism, hypoxia, and illicit use of Fentanyl*, all of which contributed to the respiratory collapse requiring EMS services March 29, 2022.

*Fentanyl consumed by Ms. Bowers prior to incarceration, would no longer be found in her plasma or urine. Thus, the Fentanyl found in urine at BMC was consumed, with a reasonable degree of medical certainty, no more 3 to 4 days prior to admission to BMC, between March 25, 2022, to March 29, 2022, and with a reasonable degree of medical certainty, responsible for the fentanyl poisoning diagnosed at BMC.

If Ms. Bowers was evaluated on March 27, 2022, for her deteriorating mental status, she would have received medical care for her progressing septicemia, pulmonary embolism, hypoxia, and illicit use of Fentanyl if it was in her system at that time, which with a reasonable degree of medical certainty, would have averted the crisis of March 29, 2022, at the WV Eastern Regional Jail necessitating EMS services.

If Ms. Bowers was evaluated on March 27, 2022, for her deteriorating mental status and received medical care for her progressing septicemia, pulmonary embolism, hypoxia, and illicit use of Fentanyl, with a reasonable degree of medical certainty, she would <u>not</u> have had the hypoxic insult to her brain on March 29, 2022, and would not be afflicted with permanent neurocognitive deficits.

The PrimeCare staff not starting oxygen immediately upon discovery that Ms. Bowers needed oxygen on March 29, 2022, was a deviation from acceptable medical practice, which with a reasonable degree of medical certainty, contributed adversely to a hypoxic brain injury and long-term neurocognitive dysfunction.

With a reasonable degree of medical certainty, Fentanyl was smuggled into the jail despite the supervision and protection of the staff of the WV Eastern Regional Jail and PrimeCare and was used by Ms. Bowers between March 25, 2022, to March 29, 2022.

With a reasonable degree of medical certainty, based on the medical record evidence, Ms. Bowers suffered an opioid overdose and poisoning at the WV Eastern Regional Jail from Fentanyl as documented in the BMC records between March 25, 2022, to March 29, 2022.

With a reasonable degree of medical certainty, as a complication of the Fentanyl overdose and poisoning, in combination with septicemia and pulmonary embolism, Ms. Bowers suffered a hypoxic injury to her brain with a long-term neurocognitive injury.

With a reasonable degree of medical certainty, some of Ms. Bowers' neurocognitive injury is permanent and life altering.

With a reasonable degree of medical certainty, if it were not for the deviations from acceptable medical care by the PrimeCare staff and the neglect of the WV Eastern Regional Jail staff allowing illicit fentanyl to be available, Ms. Bowers would have averted respiratory failure and hypoxia on March 29, 2022, at the WV Eastern Regional Jail necessitating EMS services.

Attorney Heavens, if you should have any questions regarding my opinions, please do not hesitate to contact me.

I reserve the right to supplement this report based on any new information and evidence provided to me.

I remain respectfully yours,

Lloyd Saberski, MD
Board certified Internal Medicine
Board certified Anesthesiology
Fellowship trained pain management specialist
Board certification / added qualification in Pain Management

Faculty Yale School of Medicine
Department of Medicine
Palliative & Supportive Care

Faculty University of Connecticut School of Medicine
Department of Medicine

Subscribed and sworn to before me, a Notary Public, in and for County of New Haven and State of Connecticut, this 21 day of February, 20 23

Notary Public



MARK S. WALRATH
NOTARY PUBLIC
STATE OF CONNECTICUT
MY COMM. EXP. 01-31-2026

Wesson & Ling                                        Clinical Opiate Withdrawal Scale

# APPENDIX 1
# Clinical Opiate Withdrawal Scale

For each item, circle the number that best describes the patient's signs or symptom. Rate on just the apparent relationship to opiate withdrawal. For example, if heart rate is increased because the patient was jogging just prior to assessment, the increase pulse rate would not add to the score.

Patient's Name _____        Date and Time ____/____/____:____ ____

Reason for this assessment _____

| | |
|---|---|
| **Resting Pulse Rate** _____ beats/minute<br>*Measured after patient is sitting or lying for one minute*<br>0 pulse rate 80 or below<br>1 pulse rate 81-100<br>2 pulse rate 101-120<br>4 pulse rate greater than 120 | **GI Upset** *over last 1/2 hour*<br>0 no GI symptoms<br>1 stomach cramps<br>2 nausea or loose stool<br>3 vomiting or diarrhea<br>5 multiple episodes of diarrhea or vomiting |
| **Sweating:** *over past 1/2 hour not accounted for by*<br>*room temperature or patient activity.*<br>0 no report of chills or flushing<br>1 subjective report of chills or flushing<br>2 flushed or observable moistness on face<br>3 beads of sweat on brow or face<br>4 sweat streaming off face | **Tremor** *observation of outstretched hands*<br>0 no tremor<br>1 tremor can be felt, but not observed<br>2 slight tremor observable<br>4 gross tremor or muscle twitching |
| **Restlessness** *Observation during assessment*<br>0 able to sit still<br>1 reports difficulty sitting still, but is able to do so<br>3 frequent shifting or extraneous movements of legs/arms<br>5 unable to sit still for more than a few seconds | **Yawning** *Observation during assessment*<br>0 no yawning<br>1 yawning once or twice during assessment<br>2 yawning three or more times during assessment<br>4 yawning several times/minute |
| **Pupil size**<br>0 pupils pinned or normal size for room light<br>1 pupils possibly larger than normal for room light<br>2 pupils moderately dilated<br>5 pupils so dilated that only the rim of the iris is visible | **Anxiety or Irritability**<br>0 none<br>1 patient reports increasing irritability or anxiousness<br>2 patient obviously irritable or anxious<br>4 patient so irritable or anxious that participation in<br>the assessment is difficult |
| **Bone or Joint aches** *If patient was having pain*<br>*previously, only the additional component attributed*<br>*to opiates withdrawal is scored*<br>0 not present<br>1 mild diffuse discomfort<br>2 patient reports severe diffuse aching of joints/muscles<br>4 patient is rubbing joints or muscles and is unable to sit<br>still because of discomfort | **Gooseflesh skin**<br>0 skin is smooth<br>3 piloerection of skin can be felt or hairs standing up<br>on arms<br>5 prominent piloerection |
| **Runny nose or tearing** *Not accounted for by cold*<br>*symptoms or allergies*<br>0 not present<br>1 nasal stuffiness or unusually moist eyes<br>2 nose running or tearing<br>4 nose constantly running or tears streaming down cheeks | **Total Score** _____<br>The total score is the sum of all 11 items<br><br>Initials of person<br>completing assessment: _____ |

Score: 5-12 = mild, 13-24 = moderate, 25-36 = moderately severe, more than 36 = severe withdrawal.

This version may be copied and used clinically.

*Journal of Psychoactive Drugs*                               Volume 35 (2), April - June 2003

Source: Wesson, D. R., & Ling, W. (2003). The Clinical Opiate Withdrawal Scale (COWS). *J Psychoactive Drugs. 35(2), 253-9*