UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

AT MARTINSBURG

JESSICA B. BOWERS,

    Plaintiff,

v.                                            CIVIL ACTION NO. 3:23-cv-00119

JEFF S. SANDY,
*individually and in his official capacity as
the former Cabinet Secretary of the West Virginia
Department of Homeland Security,* and
BETSY JIVIDEN,
*individually and as a former employee of the West Virginia
Division of Corrections and Rehabilitation*, and
DIDYMUS TATE,
*individually and as an employee of the West Virginia
Division of Corrections and Rehabilitation,* and
JOHN/JANE DOE UNKNOWN EMPLOYEES OR
AGENTS OF THE WEST VIRGINIA DIVISION
OF CORRECTIONS AND REHABILITATION,
*individually and as employees or agents of the West
Virginia Division of Corrections and Rehabilitation,* and
ASHLEY FISHER,
*individually and as an employee of PrimeCare,* and
LISA BEARD,
*individually and as an employee of PrimeCare,* and
KELSEY SHANK,
*individually and as an employee of PrimeCare,* and
CHRISTIN BELL,
*individually and as an employee of PrimeCare,* and
BRENDA EAGLE,
*individually and as an employee of PrimeCare,* and
CHRISTINA WAY,
*individually and as an employee of PrimeCare,* and
CHELSEA MCCRORK,
*individually and as an employee of PrimeCare,* and
MORTICIA MARSHALL,
*individually and as an employee of PrimeCare,* and
BRANDY SCOTT,
*individually and as an employee of PrimeCare,* and

ALFRED BALDERA,
*individually and as an employee of PrimeCare,* and
PRIMECARE MEDICAL, INC., and
PRIMECARE MEDICAL OF WEST VIRGINIA, INC.,

        Defendants.

## MEMORANDUM OPINION AND ORDER

Pending is Plaintiff's Motion to Strike Affirmative Defenses [ECF 126], filed July 31, 2024. Defendants responded on August 9, 2024. [ECF 129]. Plaintiff did not reply. The matter is ready for adjudication.

### I.

On March 10, 2022, Plaintiff was booked into the Eastern Central Regional Jail ("ERJ"), a facility operated by the West Virginia Division of Corrections and Rehabilitation ("WVDCR") in Martinsburg. [ECF 107 at ¶¶ 1, 53]. During the booking process, ERJ staff referred Plaintiff to PrimeCare[1] for a medical screening due to her "long history of substance use disorder." [*Id.* at ¶ 76]. Plaintiff reported using heroin approximately twelve hours prior, and her urine drug screen results recorded on March 12, 2022,[2] were positive for fentanyl. [*Id.* at ¶¶ 78, 83]. As a result, PrimeCare began an opioid detoxification protocol on Plaintiff on March 13, 2022. [*Id.* at ¶¶ 84–86].

During detox, PrimeCare staff noted Plaintiff's "unusual behaviors" and complaints about a boil under her right arm, as well as reports from fellow inmates that she "had been taking drugs." [*Id.* at ¶¶ 90–92]. On March 18, 2022, she was transferred to intake for "better observation"

---

[1] Plaintiff uses the name PrimeCare to refer to both PrimeCare Medical, Inc., and PrimeCare Medical of West Virginia, Inc., under an alter ego theory.

[2] Although the results were recorded on March 12, 2022, there is no PrimeCare record reflecting the date and time that the specimen was collected. [ECF 107 at ¶ 83].

2

due to these concerns but was not evaluated by a physician or advanced practice clinician. [*Id.* at ¶¶ 93–94]. PrimeCare reports from March 19, 2022, to March 23, 2022, indicate that Plaintiff was stable and had no complaints. [*Id.* at ¶¶ 96–98].

On March 24, 2022, Plaintiff began "star[ing] blankly" with "no orientation" and exhibiting "psychomotor agitation." [*Id.* at ¶¶ 99–100]. Despite these issues, PrimeCare staff deferred formal assessment of Plaintiff. [*Id.* at ¶ 100]. The morning of March 26, 2022, PrimeCare staff noted that Plaintiff was "[q]uiet on her cot all night" and voiced no complaints. [*Id.* at ¶ 101]. Late that night, however, Plaintiff was reportedly "laying on [the] floor face down without any pants on," had "visible goosebumps" on her arms, complained of being cold and having leg pain, and needed assistance getting back into bed. [*Id.* at ¶ 102]. PrimeCare staff "educated [Plaintiff] not to lay on the ground" and gave her a dose of Tylenol and Gatorade. [*Id.* at ¶¶ 102–03].

The following morning, Plaintiff exhibited "bizarre behavior" and "moderate tremors of [her] upper extremities." [*Id.* at ¶ 104]. She also "struggle[d] to create a lucid conversation." [*Id.*]. Plaintiff's unusual behavior continued on March 28, 2022, with PrimeCare staff reporting that she "ha[d] been up most of the night . . . randomly screaming out," "chew[ing] on Styrofoam trays and milk cartons," and eating with her hands. [*Id.* at ¶ 107]. PrimeCare staff scheduled an appointment for Plaintiff to see a physician the following day, March 29, 2022, "for possible drug induced psychosis." [*Id.* at ¶¶ 108–09].

At 5:08 a.m. on March 29, 2022, PrimeCare staff found Plaintiff awake but unresponsive and lying contorted on the floor of her cell. [*Id.* at ¶ 111]. Her face was purple, indicating she "had been hypoxic and hypo-ventilating." [*Id.* at ¶¶ 111–12]. PrimeCare staff called the on-call physician, who authorized an emergency room evaluation but did not otherwise order on-site staff to take any actions pending the arrival of emergency services. [*Id.* at ¶¶ 111–13].

Plaintiff was transported to Berkeley Medical Center ("BMC"), where she was "intubated, placed on a ventilator, and admitted to the hospital ICU." [*Id.* at ¶ 118]. She remained at BMC until discharged to her home with a family member on May 15, 2022. [*Id.* at ¶ 116]. BMC records indicate that Plaintiff had "severe MRSA sepsis from skin lesions, a pulmonary embolus, hepatitis C, abnormal liver functions and a brain injury pattern described as leukoencephalopathy." [*Id.* at ¶ 118]. A urine drug screen was positive for fentanyl, and BMC records indicate Plaintiff had been poisoned by fentanyl or its analogs. [*Id.* at ¶¶ 118–19]. As a result, Plaintiff "was left with marked cognitive and physical incapacity" and can no longer care for herself. [*Id.* at ¶ 120].

On September 16, 2022, Plaintiff instituted this action in the Circuit Court of Berkeley County against the West Virginia Department of Military Affairs and Public Safety. [ECF 1-2 at 2]. The West Virginia Department of Homeland Security ("DHS") filed an Answer in October 2022, after which the West Virginia Division of Corrections and Rehabilitation ("WVDCR") and Wexford Health Sources, Inc., were added as Defendants. [*Id.* at 2–3]. On April 19, 2023, Plaintiff filed her First Amended Complaint, adding PrimeCare Medical, Inc., and PrimeCare Medical of West Virginia, Inc. (collectively, "PrimeCare") as Defendants. [*Id.* at 3]. Defendants DHS and WVDCR removed on May 4, 2023. [ECF 1].

On June 26, 2024, Plaintiff filed the operative Amended Complaint [ECF 107], adding as Defendants (1) Jeff S. Sandy, individually and in his official capacity as the former Cabinet Secretary of the West Virginia DHS, (2) Betsy Jividen, individually and as an employee of the WVDCR, (3) Didymus Tate, individually and as an employee of the WVDCR, (4) John/Jane Doe Unknown Employees or Agents of the WVDCR, in their individual capacities and as employees or agents of the WVDCR (collectively, the "WVDCR Defendants"), and the following persons, individually and as employees of PrimeCare, namely, Ashley Fisher, Lisa Beard, Kelsey

Shank, Christin Bell, Brenda Engle, Christina Way, Chelsea McCrork, Morticia Marshall, Brandy Scott, Jeannette Sweitzer, and Alfred Baldera (together with PrimeCare, the "PrimeCare Defendants").

Plaintiff claims her conditions of confinement and the Defendants' deliberate indifference to her serious medical needs violated her right to be free from cruel and unusual punishment pursuant to the Fourteenth Amendment. [*Id.* at 31–36]. The PrimeCare Defendants filed their respective -- yet nearly identical -- Answers to the Amended Complaint on July 10, 2024, [ECFs 110, 111, 112, 113, 114, 115] and July 22, 2024, [ECFs 118, 119, 120, 121, 122].

Plaintiff now moves to strike the PrimeCare Defendants' fifth and ninth defenses pursuant to *Federal Rule of Civil Procedure* 12(f). [ECF 126 at 3].

## II.

Rule 12(f) authorizes a court to "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). Motions under this Rule "are generally viewed with disfavor 'because striking a portion of a pleading is a drastic remedy and because it is often sought by the movant simply as a dilatory tactic.'" *Waste Mgmt. Holdings, Inc. v. Gilmore*, 252 F.3d 316, 347 (4th Cir. 2001) (quoting 5A Charles Alan Wright & Arthur Miller, Federal Practice & Procedure § 1380, 647 (2d ed. 1990)). For these reasons,

> the standard by which courts judge Rule 12(f) motions imposes a sizable burden on the movant. . . . Before granting a motion to strike, a court must be convinced there are no questions of fact, that any questions of law are clear and not in dispute, and that under no set of circumstances could the defense succeed. It is difficult to establish a defense is clearly insufficient.

*Clark v. Milam*, 152 F.R.D. 66, 70 (S.D. W. Va. 1993) (internal quotation marks and citations omitted). The Court "must view the pleading under attack in a light most favorable to the pleader."

5

*Id.* at 71. "Even where technically appropriate and well-founded, motions to strike defenses as insufficient are often denied in absence of a showing of prejudice to the moving party." *Id.* at 70 (internal quotation marks omitted).

### III.

#### A. *Fifth Defense*

Plaintiff first moves to strike the PrimeCare Defendants' fifth defense, asserting the defenses of "comparative fault, contributory negligence, assumption of risk, intervening cause, pre-existing cause, statute of limitations bar, failure to mitigate, failure to join an indispensable party and any other affirmative defense which may be developed during discovery." [ECFs 110 at 105; 111 at 107; 112 at 104; 113 at 106; 114 at 104; 115 at 104; 118 at 103; 119 at 104; 120 at 104; 121 at 104; 122 at 104]. Plaintiff's attack on this defense is twofold.

First, Plaintiff contends the reservation of the right to add additional defenses should be stricken, as the proper vehicle for adding defenses in the future is a motion for leave to amend. [ECF 126 at 3–4]. In *Courtland Co. v. Union Carbide Corp.*, the court struck an attempt to "reserve the right to raise affirmative defenses at some indefinite time in the future." 2:19-cv-00894, 2021 WL 1868313, at *3 (S.D. W. Va. May 10, 2021) (Copenhaver, J.). The court first noted that "because defenses that emerge in subsequent litigation may be asserted through amendment under Fed. R. Civ. P. 15, the right to later assert them need not be 'reserved' in a responsive pleading." *Id.* It then concluded "that permitting the defendant to reserve defenses in this manner prejudices the plaintiff because doing so risks litigation over defenses that the defendant might not ultimately assert." *Id.*

The same reasoning applies here. The PrimeCare Defendants attempt to reserve the wholesale, as-yet unknown right to assert defenses in the future. And the method for asserting

6

future defenses is through a motion to amend. The reservation of future defenses is not only unnecessary but entirely inappropriate. Accordingly, Plaintiff's motion is **GRANTED** as to the reservation of future defenses in the PrimeCare Defendants' fifth defense.

Next, Plaintiff attacks the "catch-all affirmative defenses" preceding the reservation as improper and inapplicable. [ECF 126 at 6]. She cites no prejudice. She only attacks their merits. That will not suffice for a striking order. Accordingly, Plaintiff's motion is **DENIED** in this respect.

### B. Ninth Defense

Plaintiff next moves to strike the PrimeCare Defendants' ninth defense. The PrimeCare Defendants there assert "Plaintiff has failed to plead any allegation, nor assert any evidence . . . to substantiate the extraordinary remedy of punitive damages . . . , as she has not shown that [the PrimeCare Defendants] acted with malice, evil motive, or recklessness or callous indifference to a federally protected right." [ECFs 110 at 106; 111 at 108; 112 at 105; 113 at 107; 114 at 105; 115 at 05; 118 at 104–05; 119 at 105; 120 at 105; 121 at 105; 122 at 105]. The PrimeCare Defendants then contend the punitive damages claim is barred by the Constitution and must be dismissed as a matter of law. [*Id.*].

Inasmuch as the entitlement to punitive damages will be ascertained much later in the case, a striking order is inappropriate. Accordingly, the Court **DENIES** Plaintiff's motion as to the PrimeCare Defendants' ninth defense.

## IV.

For the foregoing reasons, the Court **GRANTS** in part and **DENIES** in part Plaintiff's Motion to Strike, [**ECF 126**], as follows:

1. That the language "and any other affirmative defense which may be developed during

discovery" as contained in the fifth defense of each PrimeCare Defendant's Answer [**ECFs 110, 111, 112, 113, 114, 115, 118, 119, 120, 121, 122**] is **STRICKEN**; and

2. Plaintiff's motion is **DENIED** as to its residue.

The Clerk is **DIRECTED** to send a copy of this written opinion and order to all counsel of record and any unrepresented parties.

ENTER:   December 23, 2024

Frank W. Volk
Chief United States District Judge