# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

## AT MARTINSBURG

JESSICA B. BOWERS,

    Plaintiff,

v.                                                        CIVIL ACTION NO. 3:23-cv-00119

JEFF S. SANDY,
*individually and in his official capacity as
the former Cabinet Secretary of the West Virginia
Department of Homeland Security,* and
BETSY JIVIDEN,
*individually and as a former employee of the West Virginia
Division of Corrections and Rehabilitation*, and
DIDYMUS TATE,
*individually and as an employee of the West Virginia
Division of Corrections and Rehabilitation,* and
JOHN/JANE DOE UNKNOWN EMPLOYEES OR
AGENTS OF THE WEST VIRGINIA DIVISION
OF CORRECTIONS AND REHABILITATION,
*individually and as employees or agents of the West
Virginia Division of Corrections and Rehabilitation,* and
ASHLEY FISHER,
*individually and as an employee of PrimeCare,* and
LISA BEARD,
*individually and as an employee of PrimeCare,* and
KELSEY SHANK,
*individually and as an employee of PrimeCare,* and
CHRISTIN BELL,
*individually and as an employee of PrimeCare,* and
BRENDA EAGLE,
*individually and as an employee of PrimeCare,* and
CHRISTINA WAY,
*individually and as an employee of PrimeCare,* and
CHELSEA MCCRORK,
*individually and as an employee of PrimeCare,* and
MORTICIA MARSHALL,
*individually and as an employee of PrimeCare,* and
BRANDY SCOTT,
*individually and as an employee of PrimeCare,* and

ALFRED BALDERA,
*individually and as an employee of PrimeCare,* and
PRIMECARE MEDICAL, INC., and
PRIMECARE MEDICAL OF WEST VIRGINIA, INC.,

        Defendants.

## MEMORANDUM OPINION AND ORDER

        Pending is a Motion to Dismiss Plaintiff's Declaratory Judgment Claim, filed by Defendant PrimeCare Medical of West Virginia, Inc. ("PrimeCare") on July 10, 2024. [ECF 108]. Plaintiff Jessica B. Bowers responded on July 24, 2024, [ECF 124], and PrimeCare replied on August 1, 2024, [ECF 127]. The matter is ready for adjudication.

### I.

        On March 10, 2022, Ms. Bowers was booked into the Eastern Central Regional Jail ("ERJ"), a facility operated by the West Virginia Division of Corrections and Rehabilitation ("WVDCR") in Martinsburg. [ECF 107 at ¶¶ 1, 53]. PrimeCare, the medical service provider at ERJ, began an opioid detoxification protocol on Ms. Bowers on March 13, 2022. [*Id.* at ¶¶ 84–86].

        On March 24, 2022, Ms. Bowers began exhibiting strange behaviors, which continued until March 28, 2022, when PrimeCare staff found Ms. Bowers lying contorted on the floor of her cell, awake but unresponsive, and with a purple face. [*Id.* at ¶¶ 90–111]. PrimeCare staff contacted the on-call physician, who directed that Ms. Bowers be sent to an emergency room for evaluation. [*Id.* at ¶ 111]. Ms. Bowers was taken to Berkeley Medical Center ("BMC"), where she was "intubated, placed on a ventilator, and admitted to the hospital ICU." [*Id.* at ¶ 118]. BMC records indicate that Ms. Bowers had "severe MRSA sepsis from skin lesions, a pulmonary embolus, hepatitis C, abnormal liver functions and a brain injury pattern described as

leukoencephalopathy." [*Id.* at ¶ 118]. A urine drug screen was positive for fentanyl, and BMC records indicate Ms. Bowers had been poisoned by fentanyl or its analogues. [*Id.* at ¶¶ 118–19]. Ms. Bowers "was left with marked cognitive and physical incapacity" and can no longer care for herself. [*Id.* at ¶ 120].

On September 16, 2022, Ms. Bowers instituted this action in the Circuit Court of Berkeley County against the West Virginia Department of Military Affairs and Public Safety. [ECF 1-2 at 2]. The West Virginia Department of Homeland Security ("WVDHS") filed an answer in October 2022, after which the WVDCR and Wexford Health Sources, Inc. were added as Defendants. [*Id.* at 2–3]. On April 19, 2023, Ms. Bowers filed her First Amended Complaint, adding PrimeCare as a Defendant. [*Id.* at 3]. WVDHS and WVDCR removed on May 4, 2023. [ECF 1].

On June 26, 2024, Ms. Bowers filed the operative Amended Complaint. She asserts the PrimeCare Defendants were negligent and breached applicable standards of medical care in their treatment of Ms. Bowers. [ECF 107 at 27–31]. She further alleges that both her conditions of confinement and the Defendants' deliberate indifference to her serious medical needs violated her right to be free from cruel and unusual punishment pursuant to the Fourteenth Amendment. [*Id.* at 31–36]. In addition to damages, Ms. Bowers seeks a declaratory judgment that the PrimeCare Defendants did not have the requisite medical malpractice insurance to trigger the cap on noneconomic damages provided in § 55-7B-8(d) of the West Virginia Medical Professional Liability Act ("MPLA"). [*Id.* at 39].

PrimeCare[1] now moves to dismiss Ms. Bowers' declaratory judgment claim under

---

[1] In a footnote, PrimeCare states that Ms. Bowers' declaratory judgment claim is "ambiguous as to which parties it is directed against" and that, "to the extent that it is directed

3

*Federal Rule of Civil Procedure* 12(b)(6) for failure to state a claim upon which relief can be granted. [ECF 108].

## II.

**A.    *Motions to Dismiss Under Rule 12(b)(6)***

Rule 8(a)(2) requires that a pleader provide "a short and plain statement of the claim showing . . . entitle[ment] to relief." Fed. R. Civ. P. 8(a)(2); *Erickson v. Pardus*, 551 U.S. 89, 93 (2007). Rule 12(b)(6) correspondingly permits a defendant to challenge a complaint when it "fail[s] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). The required "short and plain statement" under Rule 8 must provide "fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotation marks and citation omitted); *McCleary-Evans v. Md. Dep't of Transp., State Highway Admin.*, 780 F.3d 582, 585 (4th Cir. 2015). A showing of an "entitlement to relief" requires "more than labels and conclusions," and "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555; *McCleary-Evans*, 780 F.3d at 585; *Bing v. Brivo Sys., LLC*, 959 F.3d 605, 616 (4th Cir. 2020), *cert. denied*, 209 L. Ed. 2d 122, 141 S. Ct. 1376 (2021); *Giarratano v. Johnson*, 521 F.3d 298, 304 (4th Cir. 2008).

The complaint need not "forecast evidence sufficient to *prove* the elements of [a] claim," but it must "allege sufficient facts to establish those elements." *Walters v. McMahen*, 684 F.3d 435, 439 (4th Cir. 2012) (citing *Robertson v. Sea Pines Real Est. Cos.*, 679 F.3d 278, 291 (4th Cir. 2012)) (internal quotation marks omitted) (emphasis added); *Ashcroft v. Iqbal*, 556 U.S.

---

against PrimeCare Medical, Inc. and the individually named providers," those parties also incorporate and assert the same arguments as PrimeCare. [ECF 108 at 2].

662, 678 (2009) (noting the opening pleading "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."); *Twombly*, 550 U.S. at 555 (stating that the operative pleading need only contain "[f]actual allegations . . . [sufficient] to raise a right to relief above the speculative level"). In sum, the complaint must allege "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570; *Robertson*, 679 F.3d at 288.

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal,* 556 U.S. at 678. A court considering a Rule 12(b)(6) motion to dismiss must "accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citing *Twombly*, 550 U.S. at 555-56); *see also S.C. Dep't of Health & Env't Control v. Com. & Indus. Ins. Co.*, 372 F.3d 245, 255 (4th Cir. 2004) (citing *Franks v. Ross*, 313 F.3d 184, 192 (4th Cir. 2002)). The court is required to "draw[] all reasonable . . . inferences from those facts in the plaintiff's favor." *Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999). However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal,* 556 U.S. at 678. Assessing the claim is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

**B.    *Declaratory Judgment***

The Declaratory Judgment Act, 28 U.S.C. § 2201, provides that federal courts "may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). The Supreme Court has "repeatedly characterized the Declaratory Judgment Act as 'an enabling Act, which confers a

5

discretion on the courts rather than an absolute right upon the litigant.'" *Wilton v. Seven Falls Co.*, 515 U.S. 277, 287 (1995) (quoting *Pub. Serv. Comm'n of Utah v. Wycoff Co.*, 344 U.S. 237, 241, (1952)); *see Trustgard Ins. Co. v. Collins*, 942 F.3d 195, 201 (4th Cir. 2019) ("This Act gives federal courts discretion to decide whether to declare the rights of litigants.").

Our Court of Appeals has identified three elements to determine whether a plaintiff has stated a claim under the Declaratory Judgment Act. First, the complaint must allege "an actual controversy" between the parties' "'of sufficient immediacy and reality to warrant issuance of a declaratory judgment.'" *Volvo Const. Equip. North America, Inc. v. CLM Equip. Co.*, 386 F.3d 581, 592 (4th Cir. 2004) (citing 28 U.S.C. § 2201); *see also Medimmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007) (quoting *Md. Cas. Co. v. Pac. Coal & Oil Co.*, 312 U.S. 270, 273 (1941)). Second, there must be an independent basis for jurisdiction. *Volvo*, 386 F.3d at 592. Third, the court cannot abuse its discretion in exercising jurisdiction. *Id.*

To state a case or controversy, a plaintiff must establish a dispute that is "definite and concrete, touching the legal relations of parties having adverse legal interests." *MedImmune, Inc.,* 549 U.S. at 127. "Basically, the question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Md. Cas. Co.*, 312 U.S. at 273; *see also Centennial Life Ins. Co. v. Poston*, 88 F.3d 255, 256 (4th Cir. 1996) (stating that an action for declaratory judgment "is appropriate 'when the judgment will serve a useful purpose in clarifying and settling the legal relations in issue, and . . . when it will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding'") (quoting *Aetna Cas. & Sur. Co. v. Quarles*, 92 F.2d 321, 325 (4th Cir. 1937)).

The second element requires a court considering a declaratory judgment action to possess an independent basis for jurisdiction over the parties, such as federal question jurisdiction or diversity jurisdiction. *Volvo*, 386 F.3d at 592; *Courthouse News Serv. v. Schaefer*, 2 F.4th 318, 324 n.1 (4th Cir. 2021). This means that the party seeking declaratory relief must independently satisfy federal subject matter jurisdiction requirements.

Finally, the Court must conduct a "Prudential Inquiry," considering factors such as federalism, efficiency, and comity in determining whether to exercise jurisdiction. *Volvo*, 386 F.3d at 594; *Courthouse News*, 2 F.4th at 324 n.1; *Myles Lumber Co. v. CNA Fin. Corp.*, 233 F.3d 821, 824 (4th Cir. 2000). "If a district court possesses declaratory judgment jurisdiction, it may nonetheless, in the exercise of its discretion, decline to entertain the action." *Volvo*, 386 F.3d at 594; *see Cont'l Cas. Co.*, 35 F.3d at 965. "The exercise of such discretion, however, is not without bounds," and "a district court must have 'good reason' for declining to exercise its declaratory judgment jurisdiction." *Volvo*, 386 F.3d at 594 (quoting *Cont'l Cas. Co.*, 35 F.3d at 965 (acknowledging that although the court possessed jurisdiction in a declaratory judgment action, the critical question was whether court should have exercised its jurisdiction)).

### III.

PrimeCare seeks dismissal of Ms. Bowers' declaratory judgment claim related to the applicability of the MPLA's cap on noneconomic damages. The MPLA governs claims of medical malpractice asserted against health care providers. *See* W. Va. Code § 55-7B-1 *et seq*. It was enacted "to control the increase in the cost of liability insurance" while "maintain[ing] access to affordable health care services" for West Virginians. *Id.* at § 55-7B-1. Accordingly, it provides limitations on the amount of noneconomic damages that plaintiffs can recover against health care

7

providers in certain circumstances. The Act provides that a plaintiff who suffered "permanent physical or mental functional injury that permanently prevents the injured person from being able to independently care for . . . herself" may recover "compensatory damages for noneconomic loss . . . not in excess of $500,000 for each occurrence, regardless of the number of plaintiffs or the number of defendants." *Id.* at § 55-7B-8(b). However, this limitation on noneconomic damages "[is] not available to any defendant in an action pursuant to [the MPLA] which does not have medical professional liability insurance in the aggregate amount of at least $1 million for each occurrence covering the medical injury which is the subject of the action." *Id.* at § 55-7B-8(d).

In her declaratory judgment claim, Ms. Bowers implies that, in order for the MPLA's damages cap to apply, each individual medical defendant must have a *separate* medical malpractice insurance policy covering at least $1 million for each occurrence. [ECF 107 at 36–39]. She identifies numerous individual PrimeCare Defendants that she claims do not have the requisite insurance coverage and seeks a declaratory judgment related to the inapplicability of the damages cap as to those Defendants. She first asks that the Court declare "that the individual medical defendants do not maintain medical professional liability insurance in the aggregate amount of at least $ 1 million dollars for each occurrence covering the medical injury as required by under [sic] West Virginia Code § 55-7B-8(d)." [ECF 107 at ¶ 194]; [*id.* at 39]. She also requests that "the Court declare that the limitations on noneconomic damages contained in West Virginia § 55-7B-8(a)-(c) and (e), are not available to PrimeCare Defendants which do not have medical professional liability insurance in the aggregate amount of at least $1 million for each occurrence covering the medical injury." [*Id.* at ¶ 210].

PrimeCare does not contradict Ms. Bower's assertions as to the individual PrimeCare Defendants' failure to maintain separate medical malpractice insurance policies.

8

Rather, PrimeCare contends that Ms. Bowers misinterprets the MPLA's insurance prerequisites for the damages cap as it applies to multiple defendants. [ECF 109]. PrimeCare maintains that "each defendant must have access to an ***aggregate*** coverage amount of at least $1 million -- not separate policies of $1,000,000 each" for the cap to apply. [*Id.* at 9 (emphasis in original)]. Thus, PrimeCare contends that its insurance policy, under which the individual PrimeCare Defendants are covered, is sufficient to trigger the MPLA's cap on damages for all PrimeCare Defendants.

To date, neither party has provided a copy of PrimeCare's full insurance policy for the Court's consideration. Thus, the question of whether the PrimeCare Defendants had sufficient insurance coverage to trigger the MPLA's damages cap is not capable of resolution at this juncture. Nonetheless, the Court **FINDS** that Ms. Bowers has alleged sufficient facts, taken as true, for her declaratory judgment claim to survive PrimeCare's motion to dismiss. The liability issue at the heart of Ms. Bowers' claim is a substantial controversy, the resolution of which will significantly affect the amount of potential damages available to Ms. Bowers. The parties clearly have "adverse legal interests" as to that issue, and those interests are "of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Md. Cas. Co.*, 312 U.S. at 273. Additionally, the Court determines both that it has independent jurisdiction over Ms. Bowers' declaratory judgment claim and that no factors presently merit declining to exercise that jurisdiction.

### IV.

For the foregoing reasons, the Court **ORDERS** that PrimeCare's Motion to Dismiss Plaintiff's Declaratory Judgment Claim [**ECF 108**] is **DENIED**.

9

The Clerk is **DIRECTED** to send a copy of this written opinion and order to all counsel of record and any unrepresented parties.

ENTER: March 14, 2024

Frank W. Volk
Chief United States District Judge