UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

AT MARTINSBURG

JESSICA B. BOWERS,

    Plaintiff,

v.                                         CIVIL ACTION NO. 3:23-cv-00119

JEFF S. SANDY,
*individually and in his official capacity as the former Cabinet Secretary of the West Virginia Department of Homeland Security,* and
BETSY JIVIDEN,
*individually and as a former employee of the West Virginia Division of Corrections and Rehabilitation*, and
DIDYMUS TATE,
*individually and as an employee of the West Virginia Division of Corrections and Rehabilitation,* and
JOHN/JANE DOE UNKNOWN EMPLOYEES OR AGENTS OF THE WEST VIRGINIA DIVISION OF CORRECTIONS AND REHABILITATION,
*individually and as employees or agents of the West Virginia Division of Corrections and Rehabilitation,* and
ASHLEY FISHER,
*individually and as an employee of PrimeCare,* and
LISA BEARD,
*individually and as an employee of PrimeCare,* and
KELSEY SHANK,
*individually and as an employee of PrimeCare,* and
CHRISTIN BELL,
*individually and as an employee of PrimeCare,* and
BRENDA EAGLE,
*individually and as an employee of PrimeCare,* and
CHRISTINA WAY,
*individually and as an employee of PrimeCare,* and
CHELSEA MCCRORK,
*individually and as an employee of PrimeCare,* and
MORTICIA MARSHALL,
*individually and as an employee of PrimeCare,* and
BRANDY SCOTT,
*individually and as an employee of PrimeCare,* and

ALFRED BALDERA,
*individually and as an employee of PrimeCare,* and
PRIMECARE MEDICAL, INC., and
PRIMECARE MEDICAL OF WEST VIRGINIA, INC.,

        Defendants.

## MEMORANDUM OPINION AND ORDER

Pending is a Motion to Dismiss [ECF 155], filed by Defendants Betsy Jividen, Jeff A. Sandy, and Didymus Tate (collectively, the "Moving Defendants") on January 6, 2025. Plaintiff Jessica B. Bowers responded on January 21, 2025, [ECF 160], and Moving Defendants replied on January 29, 2025, [ECF 161]. The matter is ready for adjudication.

### I.

On March 10, 2022, Ms. Bowers was booked into the Eastern Central Regional Jail ("ERJ"), a facility operated by the West Virginia Division of Corrections and Rehabilitation ("WVDCR") in Martinsburg. [ECF 107 at ¶¶ 1, 53]. PrimeCare, the medical service provider at ERJ, began an opioid detoxification protocol on Ms. Bowers on March 13, 2022. [*Id.* at ¶¶ 84–86].

On March 24, 2022, Ms. Bowers began exhibiting strange behaviors, which continued until March 28, 2022, when PrimeCare staff found Ms. Bowers lying contorted on the floor of her cell, awake but unresponsive, and with a purple face. [*Id.* at ¶¶ 90–111]. PrimeCare staff contacted the on-call physician, who directed that Ms. Bowers be sent to an emergency room for evaluation. [*Id.* at ¶ 111]. Ms. Bowers was taken to Berkeley Medical Center ("BMC"), where she was "intubated, placed on a ventilator, and admitted to the hospital ICU." [*Id.* at ¶ 118]. BMC records indicate that Ms. Bowers had "severe MRSA sepsis from skin lesions, a pulmonary

embolus, hepatitis C, abnormal liver functions and a brain injury pattern described as leukoencephalopathy." [*Id.* at ¶ 118]. A urine drug screen was positive for fentanyl, and BMC records indicate Ms. Bowers had been poisoned by fentanyl or its analogues. [*Id.* at ¶¶ 118–19]. Ms. Bowers "was left with marked cognitive and physical incapacity" and can no longer care for herself. [*Id.* at ¶ 120].

On September 16, 2022, Ms. Bowers instituted this action in the Circuit Court of Berkeley County against the West Virginia Department of Military Affairs and Public Safety. [ECF 1-2 at 2]. The West Virginia Department of Homeland Security ("WVDHS") filed an answer in October 2022, after which the WVDCR and Wexford Health Sources, Inc. were added as Defendants. [*Id.* at 2–3]. On April 19, 2023, Ms. Bowers filed her First Amended Complaint, adding PrimeCare as a Defendant. [*Id.* at 3]. WVDHS and WVDCR removed on May 4, 2023. [ECF 1].

On June 26, 2024, Ms. Bowers filed the operative Amended Complaint, substituting Moving Defendants for John/Jane Doe WVDCR employees. As to Moving Defendants, Ms. Bowers asserts a claim pursuant to 42 U.S.C. § 1983, arguing that both her conditions of confinement and Moving Defendants' deliberate indifference to her serious medical needs violated her right to be free from cruel and unusual punishment under the Fourteenth Amendment. [ECF 107 at 31–36].

Moving Defendants now seek to dismiss Ms. Bowers' Complaint under *Federal Rule of Civil Procedure* 12(b)(6) for failure to state a claim upon which relief can be granted. [ECF 155]. They also assert that they are entitled to qualified immunity. [*Id.*].

## II.

### A. *Motions to Dismiss Under Rule 12(b)(6)*

Rule 8(a)(2) requires that a pleader provide "a short and plain statement of the claim showing . . . entitle[ment] to relief." Fed. R. Civ. P. 8(a)(2); *Erickson v. Pardus*, 551 U.S. 89, 93 (2007). Rule 12(b)(6) correspondingly permits a defendant to challenge a complaint when it "fail[s] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). The required "short and plain statement" under Rule 8 must provide "fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotation marks and citation omitted); *McCleary-Evans v. Md. Dep't of Transp., State Highway Admin.*, 780 F.3d 582, 585 (4th Cir. 2015). A showing of an "entitlement to relief" requires "more than labels and conclusions," and "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555; *McCleary-Evans*, 780 F.3d at 585; *Bing v. Brivo Sys., LLC*, 959 F.3d 605, 616 (4th Cir. 2020), *cert. denied*, 209 L. Ed. 2d 122, 141 S. Ct. 1376 (2021); *Giarratano v. Johnson*, 521 F.3d 298, 304 (4th Cir. 2008).

The complaint need not "forecast evidence sufficient to *prove* the elements of [a] claim," but it must "allege sufficient facts to establish those elements." *Walters v. McMahen*, 684 F.3d 435, 439 (4th Cir. 2012) (citing *Robertson v. Sea Pines Real Est. Cos.*, 679 F.3d 278, 291 (4th Cir. 2012)) (internal quotation marks omitted) (emphasis added); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (noting the opening pleading "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."); *Twombly*, 550 U.S. at 555 (stating that the operative pleading need only contain "[f]actual allegations . . . [sufficient] to raise a right to relief above the speculative level"). In sum, the

complaint must allege "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570; *Robertson*, 679 F.3d at 288.

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal,* 556 U.S. at 678. A court considering a Rule 12(b)(6) motion to dismiss must "accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citing *Twombly*, 550 U.S. at 555-56); *see also S.C. Dep't of Health & Env't Control v. Com. & Indus. Ins. Co.*, 372 F.3d 245, 255 (4th Cir. 2004) (citing *Franks v. Ross*, 313 F.3d 184, 192 (4th Cir. 2002)). The court is required to "draw[] all reasonable . . . inferences from those facts in the plaintiff's favor." *Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999). However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal,* 556 U.S. at 678. Assessing the claim is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

### III.

Moving Defendants seek dismissal on two grounds. First, they contend that Ms. Bowers has failed to allege sufficient facts to support her claims. [ECF 155]. Next, they contend that even were the Complaint factually sufficient to state a claim upon which relief can be granted, they are, nonetheless, entitled to qualified immunity. [ECF 155 at 4].

A.   ***Deliberate Indifference to Serious Medical Needs***

Because the Eighth Amendment "has no application" where there has "been no formal adjudication of guilt against [an incarcerated person] at the time [she] required medical

5

care," *City of Revere v. Massachusetts Gen. Hosp.*, 463 U.S. 239, 244 (1983), deliberate indifference claims for pretrial detainees arise under the Due Process Clause of the Fourteenth Amendment. *Short v. Hartman*, 87 F.4th 593, 611 (4th Cir. 2023) (citing *Kingsley v. Hendrickson*, 576 U.S. 389, 398 (2015)). To state such a claim, a pretrial detainee must plead the following:

> (1) they had a medical condition or injury that posed a substantial risk of serious harm; (2) the defendant intentionally, knowingly, or recklessly acted or failed to act to appropriately address the risk that the condition posed; (3) the defendant knew or should have known (a) that the detainee had that condition and (b) that the defendant's action or inaction posed an unjustifiably high risk of harm; and (4) as a result, the detainee was harmed.

*Short*, 87 F.4th at 611. A pretrial detainee need not "show that the defendant had actual knowledge of the detainee's serious medical condition and consciously disregarded the risk that their action or failure to act would result in harm." *Id.* Rather, "it is sufficient that the plaintiff show that the defendant's action or inaction was . . . objectively unreasonable: that is, the plaintiff must show that the defendant should have known of that condition and that risk, and acted accordingly." *Id.* (cleaned up). However, "it is still not enough for the plaintiff to allege that the defendant negligently or accidentally failed to do right by the detainee." *Id.*

Here, the Amended Complaint broadly restates the applicable law, with few facts to support its conclusions. One of the most substantial allegations Ms. Bowers makes in support of her constitutional claim is as follows:

> The conduct of Defendants . . . in permitting persons to bring Fentanyl into the ERJ and failing to protect Plaintiff, is a violation of standards applicable to correctional facilities and was a proximate cause and/or contributing factor to the injuries suffered by Jessica Bowers, because Plaintiff, Jessica Bowers, was a drug addict who did not receive help to withdraw from her drug dependency in a manner that complied with the basic standards applicable to all defendants.

[ECF 107 at ¶ 170]. However, this statement leaves a plethora of questions that the remainder of the Amended Complaint fails to answer. Ms. Bowers fails to allege specific actions or inactions

6

by the Moving Defendants that could reasonably be construed as "permitting" Fentanyl to be brought into the facility. In fact, Ms. Bowers does not even allege how or why the Moving Defendants knew or should have known that Fentanyl had entered the facility or how Ms. Bowers came into the possession of Fentanyl while detained. Ms. Bowers also fails to show how the detoxification treatment Defendants administered was insufficient to "help to withdraw from her drug dependency in a manner that complied with the basic standards applicable to all defendants." [*Id.* at ¶¶ 85-86, 170]. And although Ms. Bowers alleges that the Defendants "routinely failed to promptly provide [her with] necessary and reasonable medical treatment," [*Id.* at ¶ 174], she provides no facts to support that contention. Additionally, it is unclear from Ms. Bowers' Amended Complaint what role, if any, the Moving Defendants specifically played in providing Ms. Bowers with medical treatment.

Inasmuch as Ms. Bowers' Amended Complaint consists primarily of unsupported legal conclusions that fail to adequately demonstrate Moving Defendants' alleged misconduct, the Court finds that Ms. Bowers' claim for deliberate indifference to serious medical needs under the Fourteenth Amendment fails to state a claim upon which relief can be granted as to Moving Defendants. Accordingly, the Court **GRANTS** Defendants' Motion to Dismiss as to that claim.

**B.    *Conditions of Confinement***

The Supreme Court has concluded that "under the Due Process Clause [of the Fourteenth Amendment], a detainee may not be punished prior to an adjudication of guilt in accordance with due process of law." *Bell v. Wolfish*, 441 U.S. 520, 535 (1979); *see Matherly v. Andrews,* 859 F.3d 264, 274 (4th Cir. 2017); *Martin v. Gentile,* 849 F.2d 863, 870 (4th Cir. 1988). Accordingly, "[i]n evaluating the constitutionality of conditions or restrictions of pretrial detention

that implicate only the protection against deprivation of liberty without due process of law, . . . the proper inquiry is whether those conditions amount to punishment of the detainee." *Bell*, 441 U.S. at 535; *see Short,* 87 F.4th at 606 ("[T]he Fourteenth Amendment Due Process Clause protects pretrial detainees from being punished at all. As a result, any pretrial detention conditions that 'amount to punishment' violate due process.") (cleaned up). To establish that a condition of confinement constitutes "punishment," a pretrial detainee "must show either that [the condition] was (1) imposed with an expressed intent to punish or (2) not reasonably related to a legitimate nonpunitive governmental objective, in which case an intent to punish may be inferred." *Martin,* 849 F.2d at 870 (quoting *Bell,* 441 U.S. at 538–40); *see Kingsley*, 576 U.S. at 398 ("[A] pretrial detainee can prevail by providing only objective evidence that the challenged governmental action is not rationally related to a legitimate governmental objective or that it is excessive in relation to that purpose.").

Here, too, Ms. Bowers' claims are plagued by factually deficient allegations and sweeping legal conclusions. For instance, Ms. Bower alleges as follows:

> The actions of Defendants . . . violated the constitutional rights guaranteed to the Plaintiff, under the Fourteenth Amendment to the United States Constitution by depriving them of basic human necessities including safety, constituting punishment without due process.
>
> Defendants imposed and/or permitted these conditions despite said conditions not being reasonably related to any legitimate non-punitive governmental or penological objective.

[*Id.* at ¶¶ 155-157]. While Ms. Bowers alleges that Defendants deprived her of "basic human necessities," she wholly fails to aver what actions or inaction by the Moving Defendants resulted in such a deprivation. [*Id.* at ¶ 155]. Similarly, Ms. Bowers states that "these conditions" were "imposed and/or permitted" by Defendants without ever clarifying what those "conditions" were. [*Id.* at ¶ 156]. Without more, it is impossible to analyze whether the alleged "conditions" could be

8

"reasonably related" to a "legitimate non-punitive governmental or penological objective." [*Id*. at ¶ 156]. These broad allegations offer no insight into what exactly Moving Defendants did or did not do, much less how any alleged conduct amounts to a constitutional violation.

Ms. Bowers' claims related to the conditions of confinement are fatally broad and lacking in supporting factual allegations. For this reason, Moving Defendants' motion is **GRANTED** as to Ms. Bowers' Fourteenth Amendment claim for conditions of confinement.

C.   ***Supervisory Liability***

In some instances, "supervisory officials may be held liable . . . for the constitutional injuries inflicted by their subordinates." *Campbell v. Florian*, 972 F.3d 385, 398 (4th Cir. 2020), *as amended* (Aug. 28, 2020) (quoting *Shaw v. Stroud*, 13 F.3d 791, 798 (4th Cir. 1994)) (internal quotation marks omitted). Of course, "a supervisor may not prevent all illegal acts by his subordinates." *Randall v. Prince George's Cnty., Md.*, 302 F.3d 188, 203 (4th Cir. 2002). However, when that supervisor is "on notice of a subordinate's tendency to act outside the law," the supervisor is "obligated . . . to take steps to prevent such activity." *Id.* "If a supervisory law officer is deliberately indifferent to that responsibility, he then bears some culpability for illegal conduct by his subordinates, and he may be held vicariously liable for their illegal acts." *Id.* This supervisory liability "is not premised upon *respondeat superior* but upon a recognition that supervisory indifference or tacit authorization of subordinates misconduct may be a causative factor in the constitutional injuries they inflict." *Shaw*, 13 F.3d at 798 (quoting *Slakan v. Porter*, 737 F.2d 368, 372–73 (4th Cir. 1984)); *see Campbell*, 972 F.3d at 398. "Accordingly, a § 1983 plaintiff must show more than mere supervision." *Campbell*, 972 F.3d at 398.

To establish a § 1983 supervisory liability claim, a plaintiff must show:

> (1) that the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed "a pervasive and unreasonable risk" of constitutional injury to citizens like the plaintiff; (2) that the supervisor's response to that knowledge was so inadequate as to show "deliberate indifference to or tacit authorization of the alleged offensive practices,"; and (3) that there was an "affirmative causal link" between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff.

*Shaw*, 13 F.3d at 799.

Ms. Bowers' allegations against Moving Defendants for supervisory liability are as follows:

> 170. The conduct of Defendants, Jividen, Sandy, Tate and John/Jane Does, in permitting persons to bring Fentanyl into the ERJ and failing to protect Plaintiff, is a violation of standards applicable to correctional facilities and was a proximate cause and/or contributing factor to the injuries suffered by Jessica Bowers, because Plaintiff, Jessica Bowers, was a drug addict who did not receive help to withdraw from her drug dependency in a manner that complied with the basic standards applicable to all defendants.
>
> 171. This conduct by Defendants, Jividen, Sandy, Tate and John/Jane Does, showed deliberate indifference to the medical needs of Jessica Bowers and the unlawfulness of this conduct by Defendants was sufficiently clear so that every reasonable public official in their position would understand that what they were doing was unlawful.
>
> 172. Defendants, while acting under color of law and within the scope of their employment, violated the Fourteenth Amendment right of pretrial detainees to be free of punishment without due process.
>
> 173. The actions of Defendants, described hereinabove, violated the constitutional rights guaranteed to the Plaintiff, under the Fourteenth Amendment to the United States Constitution by acting with deliberate indifference to the serious medical needs of inmates.
>
> 174. As described hereinabove, Defendants routinely failed to promptly provide necessary and reasonable medical treatment to the Plaintiff.
>
> 175. Defendants were deliberately indifferent to, and willfully ignored, the serious medical needs of the Plaintiff, as described hereinabove, by failing to establish, monitor, and/or enforce policy directives and operational procedures to ensure that inmates at ERJ receive prompt and reasonable treatment for their medical needs.
>
> 176. Defendant supervisors likewise exhibited supervisory indifference or tacit authorization of the misconduct of subordinates and the constitutional injuries

committed by said subordinates.

177. Defendant supervisors had actual or constructive knowledge that their subordinates were engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury and the Defendant supervisors' response to said knowledge was so inadequate as to show deliberate indifference or tacit authorization of these constitutional injuries.

[ECF 107 at ¶¶ 170–77].

To satisfy *Shaw*'s first element, "a plaintiff must show the following: (1) the supervisor's knowledge of (2) conduct engaged in by a subordinate (3) where the conduct poses a pervasive and unreasonable risk of constitutional injury to the plaintiff." *Shaw*, 13 F.3d at 799 (quoting *Slakan*, 737 F.2d at 373). "Establishing a "pervasive" and "unreasonable" risk of harm requires evidence that the conduct is widespread, or at least has been used on several different occasions and that the conduct engaged in by the subordinate poses an unreasonable risk of harm of constitutional injury." *Id.* (citing *Slakan*, 737 F.2d at 373–74).

Ms. Bowers' Amended Complaint fails to allege any facts to demonstrate that the Moving Defendants, as supervisors, had actual or constructive knowledge of the conduct of their subordinates. Instead, Ms. Bowers merely recites the governing standard without any facts to support her claims and relies on the Court to fill the gaps. That is insufficient. *See Iqbal*, 550 U.S. at 679 (stating that a plaintiff's allegations must be sufficient to "permit the court to infer more than the mere possibility of misconduct" based upon "its judicial experience and common sense"). Accordingly, Ms. Bowers' legal conclusions and "formulaic recitation" of the first element are insufficient to support her claim. *Twombly*, 550 U.S. at 555; *see also King v. Rubenstein*, 825 F.3d 206, 214 (4th Cir. 2016).

In meeting *Shaw*'s second element -- "that the supervisor's response to that knowledge was so inadequate as to show 'deliberate indifference to or tacit authorization of the

alleged offensive practices,'" *Shaw*, 13 F.3d at 799 -- our Court of Appeals has concluded that,

> a plaintiff '[o]rdinarily . . . cannot satisfy his burden of proof by pointing to a single incident or isolated incidents . . . for a supervisor cannot be expected . . . to guard against the deliberate criminal acts of his properly trained employees when he has no basis upon which to anticipate the misconduct.'

*Randall*, 302 F.3d at 206 (4th Cir. 2002) (quoting *Slakan*, 737 F.2d at 373). "Recognizing that supervisory liability can extend to the highest levels of state government, [our Court of Appeals] [has] noted that liability ultimately is determined by pinpointing the persons in the decisionmaking chain whose deliberate indifference permitted the constitutional abuses to continue unchecked." *Shaw*, 13 F.3d at 798 (quoting *Slakan*, 737 F.2d at 373) (internal quotation marks omitted). In other words, "[t]he supervisor's own response to the knowledge of a risk of constitutional injury must be 'so inadequate as to show deliberate indifference to or tacit authorization of the alleged offensive practices.'" *Campbell*, 972 F.3d at 398 (quoting *Randall*, 302 F.3d at 203).

Here, too, Ms. Bowers' allegations amount to a conclusory regurgitation of the deliberate indifference standard without any factual underpinnings. Ms. Bowers alleges that "Defendant supervisors . . . exhibited supervisory indifference or tacit authorization of the misconduct of subordinates and the constitutional injuries committed by said subordinates." [ECF 107 ¶ 176]. But Ms. Bowers is wholly silent as to how she came to that conclusion. Because this is no more than a "[t]hreadbare recital[]" of the applicable standard, it is insufficient to prove the second element has been met. *Iqbal*, 556 U.S. at 678.

To prove the third element, causation, a plaintiff must establish an "affirmative causal link between the supervisor's inaction and the harm suffered by the plaintiff." *Shaw,* 13 F.3d at 799 (quoting *Slakan*, 737 F.2d at 376). According to Ms. Bowers,

> [a]s a direct and proximate result of Defendants' unlawful, unjustified, and unconstitutional actions, [she] suffered a deprivation of their [sic] Constitutional rights and physical harm, and will seek compensatory and nominal damages for,

12

*inter alia*, physical pain and discomfort; the physical effects of her neurocognitive damages; the development of associated medical conditions; and consuming illegal drugs that were smuggled into the jail where she was housed.

[ECF 107 at ¶ 184]. Ms. Bowers broadly alleges that Defendants' actions are the "direct and proximate" cause of her injuries. However, she fails to make any showing beyond this generalized statement as to what action or inaction on the part of the Moving Defendants caused those injuries.

In sum, Ms. Bowers fails to allege a successful Fourteenth Amendment claim against Moving Defendants. The only allegations against Moving Defendants are precisely the type of "unadorned, the-defendant-unlawfully-harmed-me accusation[s]" and "legal conclusions" that *Iqbal* forbids. *Iqbal*, 556 U.S. at 678.

### IV.

For the foregoing reasons, the Court **GRANTS** the Motion to Dismiss [**ECF 155**] filed by Defendants Betsy Jividen, Jeff A. Sandy, and Didymus Tate.

The Clerk is **DIRECTED** to send a copy of this written opinion and order to all counsel of record and any unrepresented parties.

ENTER:   July 16, 2025

Frank W. Volk
Chief United States District Judge